HAYNES CONSTRUCTION COMPANY *v.* CASCELLA AND
SON CONSTRUCTION, INC.
(12636)

DUPONT, C. J., and FOTI and SPEAR, JS.

Submitted on briefs February 28—decision released July 28, 1994

*Richard K. Mulroney* filed a brief for the appellant (defendant).

*Michele C. Lukban* filed a brief for the appellee (plaintiff).

SPEAR, J. The defendant subcontractor appeals from the trial court's judgment vacating a $44,900 arbitration award that was rendered in its favor. The defend-

ant claims that the trial court improperly (1) allowed an amendment to the application to vacate the award without first taking evidence on why the amendment was filed late, (2) found evident partiality in that the attorney-arbitrator failed to disclose fully the extent of his attorney-client relationship with the in-laws of one of the defendant's principals, and (3) found that the award violated public policy because the defendant failed to pay prevailing wages in a timely manner to his workers in violation of General Statutes § 31-71b (a)[1] and General Statutes (Rev. to 1991) § 31-53 (b).[2] We decline to review the claim that the trial court improperly allowed the amendment. We conclude that the trial court improperly found evident partiality and that there was no proper basis for vacating the award on the public policy ground.

The plaintiff and the defendant entered into a contract wherein the defendant, a subcontractor, was to render certain construction site services to the plaintiff, a general contractor, for a contract price of $184,200. A contract dispute arose and the parties proceeded to arbitration pursuant to article 6.1[3] of their contract. The arbitrator awarded the defendant $44,900 on its claim.

---

[1] General Statutes § 31-71b (a) provides in pertinent part: "[E]ach employer, by himself, his agent or representative, shall pay weekly all moneys due each employee on a regular pay day . . . ."

[2] General Statutes (Rev. to 1991) § 31-53 (b) provides in pertinent part: "Any person who knowingly or wilfully employs any mechanic, laborer [or] workman . . . of any public works project for or on behalf of the state . . . at a rate of wage on an hourly basis which is less than the rate customary or prevailing for the same work in the same trade or occupation in the town in which the public works project is being constructed . . . shall be fined not more than one hundred dollars for each offense."

[3] Article 6.1 of the contract provides in pertinent part: "All claims, disputes and matters in question arising out of or relating to this agreement . . . shall be decided by arbitration . . . ."

The plaintiff filed a timely application to vacate the award pursuant to General Statutes § 52-418 (a),[4] alleging that the award was contrary to public policy because the defendant "failed to pay its employees lawful wages." On the date scheduled for the hearing on the application, the plaintiff filed an amended application to vacate the award alleging the additional ground of "evident partiality on the part of the arbitrator which was not fully disclosed." The defendant objected to the amendment claiming that it was not timely.[5] The trial court stated that it would hear evidence on the amended application, reserve decision on the timeliness objection, and allow the parties to file posttrial briefs on all of the issues. Although not ruling directly on the defendant's timeliness objection, the trial court effectively overruled it by finding evident partiality as a basis for its decision to vacate the award.

The trial court found that "[w]hile the arbitrator did disclose that he had represented the defendant's in-laws in a zoning matter, he failed to disclose that this was an ongoing attorney-client relationship at the time of the arbitration." The trial court concluded that this failure to disclose required that the award be vacated pursuant to § 52-418 because of the arbitrator's evident partiality.

---

[4] General Statutes § 52-418 (a) provides in pertinent part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[5] The defendant cited no statute or authority in support of its claim, but stated that the amendment was beyond the "thirty day period." General Statutes § 52-420 (b) provides that no motion to vacate "may be made after thirty days from the notice of the award. . . ."

The trial court also found that the defendant had an agreement with its workers whereby the balance of their wages "would be paid at the completion of the project. Such an agreement constitutes a violation of § 31-53." The trial court went on to find that § 31-71b, when read together with § 31-53, required the "payment of prevailing wages on a regular pay day." The court then concluded that because of this agreement the award was in contravention of the public policy expressed in §§ 31-53 and 31-71b and therefore should be vacated.

" 'On appeal, the function of this court is limited solely to the determination of whether the factual findings of the trial court are clearly erroneous or whether the decision is otherwise erroneous in law.' *Public Works Supply Co.* v. *Eveready Machinery Co.,* 11 Conn. App. 79, 525 A.2d 988 (1987). Determining whether a trial court's decision is clearly erroneous ' "involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous." ' *Cookson* v. *Cookson,* 201 Conn. 229, 243, 514 A.2d 323 (1986); *Berlin* v. *Commissioner of Revenue Services,* 207 Conn. 289, 292–93, 540 A.2d 1051 (1988); *Kimberly-Clark Corp.* v. *Dubno,* 204 Conn. 137, 153, 527 A.2d 679 (1987)." *Patron* v. *Konover,* 35 Conn. App. 504, 508–509, 646 A.2d 901 (1994). We review each of the defendant's claims in turn.

I

The defendant first claims that the trial court improperly permitted the plaintiff to amend its application to

vacate the arbitrator's award because there was no evidence to allow such an amendment. The defendant asserts that "[i]t was incumbent upon the plaintiff to put witnesses on the stand to establish an evidentiary base to support [its] right to file a late amendment."

No authority, statutory or case law, is cited in support of this claim.[6] "We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." *Latham & Associates, Inc.* v. *William Raveis Real Estate, Inc.*, 218 Conn. 297, 300, 589 A.2d 337 (1991); see Practice Book § 4065; *Gaynor* v. *Union Trust Co.*, 216 Conn. 458, 482, 582 A.2d 190 (1990); *Cohen* v. *Security Title & Guaranty Co.*, 212 Conn. 436, 436–37 n.1, 562 A.2d 510 (1989). We therefore decline to review this claim.

## II

The plaintiff's amended application to vacate the arbitration award alleged that there was "evident partiality on the part of the arbitrator which was not fully disclosed." The trial court concluded that there was evident partiality on the basis of its finding that the arbitrator had failed to disclose *fully* his *attorney-client relationship* with the in-laws of Todd Cascella, one of the defendant's principals. Specifically, the court found that the arbitrator had failed to disclose that the attorney-client relationship was ongoing at the time of the arbitration.

The defendant asserts, albeit inartfully, that (1) evident partiality based on the attorney-client rela-

---

[6] The defendant's claim of a "late" amendment does not analyze or implicate the thirty day provision of General Statutes § 52-420 (b). The only analysis offered in its one page argument was that the plaintiff *might* have known of this partiality claim all along and withheld it as an "ace in the hole" in the event of an adverse arbitration award. This argument is unrelated to whether § 52-420 (b) prohibits the amendment of an application to vacate an arbitration award beyond thirty days from the notice of the award.

tionship was not properly raised as an issue before the trial court and, therefore, the court was precluded from making such a finding, and (2) the evidence does not support a finding of evident partiality. The first claim is dispositive.

The plaintiff's claim of evident partiality simply asserts a legal conclusion that was delineated for the first time at the hearing on the application to vacate the award. After the plaintiff's attorney questioned the arbitrator about his disclosure[7] and after the arbitrator stated that he stopped by Todd Cascella's in-laws' delicatessen every morning, the trial court interrupted

---

[7] The testimony of the arbitrator, Frederick Ehrsam, was as follows:

"Q. Okay. And did there come a time when we returned after a June session in September, that you felt that it was necessary to call Attorney Mulroney and myself to your office to make a certain disclosure?

"A. That is correct.

"Q. And can you tell the court essentially what that disclosure was?

"A. I'm not sure. . . . I believe there were more, I know there was more than one disclosure.

"Q. That's correct.

"A. I'm not sure which one you're referring to.

"Q. I'm referring to the one where we went into your office, you had indicated that you felt it was necessary to call up to Hartford and get some guidance and they had given you some direction.

"A. Oh. Yes, okay. I was invited to a client's wedding, a daughter of a client's wedding. And the daughter was, which I did not know, was engaged prior to the hearings, but was going to marry Mr. Cascella. I disclosed that to the Hartford office. Who advised me that if you and opposing attorney, counsel had no objection, it could proceed. And if there was an objection, that it would be then, the hearing would be terminated and a new arbitrator would be appointed.

"Q. And Attorney Ehrsam, I'm going to ask if you can search your memory because I assure you I've searched mine to try to recall what the nature of the relationship was that led to your being invited to the wedding. In other words, what you had disclosed to myself and opposing counsel that led to your being invited?

"A. I was an attorney who represented the bride's parents with a zoning matter. I did not represent them when they purchased the business. I represented the seller, not the buyer. I did not represent the owners of that business at any time other than for the zoning matter. Which was concluded just last week."

the plaintiff's attorney to ask if the disclosure had been placed on the record. The plaintiff's attorney responded: "Well first of all, Your Honor, there was, there was no record. What I did, when the disclosure was made by Attorney Ehrsam, I went and consulted with my clients. And I relayed the information that Attorney Ehrsam has just indicated was his relationship with the, Mr. Cascella's bride's parents to my clients. Which I understood, and counseled my clients, seemed to be just a normal run of the mill professional relationship. A client coming through the office. And because of other factors we decided that we would *waive any potential conflict.* The information that Attorney Ehrsam has just provided the court, is in fact the information that we just . . . became apprised of . . . . *That he goes into this place every day.* And Your Honor, I think that the significance of that, is that that says to me that now we *don't have a professional relationship,* but perhaps a *personal* one as well. Perhaps a personal relationship that pre-dated the professional relationship *and that's a huge difference, Your Honor. . . ."* (Emphasis added.)

After more statements about the arbitrator's daily visits to the delicatessen, the plaintiff's attorney stated that "I don't think that any further questions need to be asked. *That is specifically the issue. That's the reason for the amendment."* (Emphasis added.) On redirect examination, the plaintiff's attorney asked only four questions, none of which related to the disclosure of the attorney-client relationship between the arbitrator and Todd Cascella's in-laws. Only one other question regarding disclosure was asked by the plaintiff's attorney: "So, you did not feel that it would be prudent to disclose that you stop into this delicatessen each morning?" This question was not answered, however, because at this point the court interrupted to inquire whether the attorney-client disclosure had been placed on the record.

An arbitrator has a duty to disclose circumstances arising after an arbitration proceeding begins that might tend to indicate partiality or bias. *Merit Ins. Co.* v. *Leatherby Ins. Co.,* 714 F.2d 673, 678 (7th Cir.), cert. denied, 464 U.S. 1009, 104 S. Ct. 529, 78 L. Ed. 2d 711 (1983); *Freeport Construction Co.* v. *Star Forge, Inc.,* 61 Ill. App. 3d 999, 1005–1006, 378 N.E.2d 558 (1978). In this case, however, *any* potential conflict arising out of the attorney-client relationship was expressly waived at the arbitration hearing. It is obvious from a review of the transcript of the hearing on the application to vacate that the plaintiff was concerned with a possible previously undisclosed social or personal relationship between the arbitrator and Todd Cascella's inlaws, not with their attorney-client relationship.

"It is a common rule of pleading that the allegations of a complaint limit the issues to be decided on the trial of a case and are calculated to prevent surprise to opposing parties." (Internal quotation marks omitted.) *New Haven* v. *Mason,* 17 Conn. App. 92, 94–95, 550 A.2d 18 (1988). A party also has a right to fair notice "that a court may render a judgment with respect to a given issue." *Hodge* v. *Hodge,* 178 Conn. 308, 315, 422 A.2d 280 (1979); *Winick* v. *Winick,* 153 Conn. 294, 298–99, 216 A.2d 185 (1966). Here, the defendant was faced with a conclusory allegation that did not alert him to any of the plaintiff's factual claims. Under these circumstances, the defendant was entitled to rely on the statement of the claim placed on the record and the acknowledgment that any claims based on the attorney-client relationship had been waived before the arbitrator.

The rule requiring that claims be raised distinctly and in a timely fashion in the trial court is not only so that the court may give meaningful consideration to the claims but also to prevent counsel from surprising an opponent by interjecting a claim when that opponent

no longer is in a position to present evidence against such a claim. *Swerdloff* v. *AEG Design/Build, Inc.,* 209 Conn. 185, 189, 550 A.2d 306 (1988); see *Oak Leaf Marina, Inc.* v. *Ertel,* 23 Conn. App. 91, 95–96, 579 A.2d 568, cert. denied, 216 Conn. 827, 582 A.2d 206 (1990). When the trial court surprises a party by deciding a case on a claim that was not presented to it, that party obviously is no longer in a position to counter the claim. By its ruling, the trial court deprived the defendant of its right to put on evidence regarding the disclosure of the attorney-client relationship by the arbitrator. Our Supreme Court has stated in an action to discharge a mortgage and lis pendens that "the trial court lacked jurisdiction to determine the validity of the [underlying] note on the usury ground because that issue had not been raised in the pleadings." *Gordon* v. *Tufano,* 188 Conn. 477, 482, 450 A.2d 852 (1984). This court has held that "[a] judgment granting a prescriptive easement where none was sought and where no pleading raised any issue other than whether the plaintiff had acquired title by adverse possession cannot survive appeal." *Sanford* v. *Dimes,* 3 Conn. App. 639, 640, 491 A.2d 398 (1985).

At the hearing before the trial court, the plaintiff's counsel expressly disavowed any interest in the *professional* attorney-client relationship. Most of the arbitrator's testimony concerned his morning trips to the delicatessen to pick up a newspaper and an occasional cup of coffee to go. This routine was the basis of the plaintiff's allegation of evident partiality. Given the articulation of this claim by the plaintiff's attorney, the defendant had no reason to offer evidence on the extent of the disclosure of the arbitrator's attorney-client relationship with Cascella's in-laws. As the trial court's legal conclusion of evident partiality was based on a claim that was not noticed or raised, it cannot stand.

Our conclusion that the trial court improperly based its decision on the finding of a failure to disclose fully the attorney-client relationship makes it unnecessary to address the question of whether that finding was supported by the evidence.

### III

The plaintiff claimed, and the trial court found, that the arbitrator's award was in violation of the public policy requiring payment of lawful wages in a timely fashion on this construction project, pursuant to General Statutes § 31-53[8] and § 31-71b. The trial court ruled that "when viewed together, §§ 31-71[b][9] and 31-53 require the payment of prevailing wages on a regular pay day. Since the defendant agreed to pay his employees fully only upon completion of the project, the court concludes that General Statutes §§ 31-71[b] and 31-53 have been violated. Accordingly, the arbitration award should be and is vacated because such an award would be in contravention of public policy as expressed in §§ 31-53 and 31-71[b]."

Todd Cascella testified that he was the "owner" of the defendant construction company. He further testified that he had an agreement with his employees to pay them a portion of the prevailing wage[10] each week with the balance to be paid when the plaintiff paid the defendant. On the basis of all of the evidence before it, the trial court could reasonably and logically have

---

[8] The court cited and relied on the following portion of General Statutes § 31-53 (a): "The wages paid on an hourly basis to any mechanic, laborer or workman . . . shall be at a rate equal to the rate customary or prevailing for the same work in the same trade or occupation in the town in which such public works project is being constructed."

[9] The trial court's memorandum of decision refers to General Statutes § 31-716. This is obviously a typographical error as there is no such statute and the court quotes the following pertinent language from General Statutes § 31-71b: "(a) Each employer . . . shall pay weekly all moneys due each employee on a regular pay day . . . ."

[10] See footnote 8.

found that the defendant violated §§ 31-53 and 31-71b. The defendant concedes that there may have been a "technical violation of the statutes," but argues that vacating the award is inappropriate. We agree because we conclude that the award does not violate public policy.

An arbitration award that violates public policy may be vacated but "only when the award is clearly illegal or clearly violative of a strong public policy." *Garrity* v. *McCaskey*, 223 Conn. 1, 7, 612 A.2d 742 (1992). This is so "[i]n light of the strong public policy that favors arbitration . . . ." Id.; see also *Watertown Police Union Local 541* v. *Watertown*, 210 Conn. 333, 339, 555 A.2d 406 (1989). "Parties cannot expect an intervening arbitral award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them." (Internal quotation marks omitted.) *Stamford* v. *Stamford Police Assn.*, 14 Conn. App. 257, 259, 540 A.2d 400 (1988).

Arbitration in this case is a result of the contract of the parties. A well recognized principle of contract law is that agreements in violation of public policy will not be enforced by the courts. In *Tator* v. *Valden*, 124 Conn. 96, 101, 198 A. 169 (1938), our Supreme Court stated that "[i]t is unquestionably the general rule, upheld by the great weight of authority, that no court will lend its assistance in any way toward carrying out the terms of a contract, the *inherent purpose of which is to violate the law*. In case any action is brought in which it is necessary to prove the *illegal contract* in order to maintain the action, courts will not enforce it, nor will they enforce any alleged right directly springing from such contract . . . ." (Emphasis added; internal quotation marks omitted.) See also *Connecticut Importing Co.* v. *Janowitz*, 128 Conn. 433, 436, 23 A.2d 514 (1941); *State* v. *Council 4, AFSCME*, 27 Conn. App. 635, 640, 608 A.2d 718 (1992).

The contract in this case did not have a violation of the law as its inherent purpose. It was simply a contract by the defendant to render certain subcontracting services to the plaintiff. In fact, the contract contains no mention whatever of payment of the prevailing wages, nor was it necessary to prove the illegal wage payment plan in order to prove the defendant's claim in the arbitration proceedings. In *Burns* v. *Koellmer,* 11 Conn. App. 375, 380, 527 A.2d 1210 (1987), this court rejected a claim that the trial court should not enforce an employment contract between two parties who were cohabiting in an adulterous relationship because such enforcement would violate public policy. We held that "the alleged contract was not made for or about the parties' living arrangements or sexual behavior. The agreement of the parties as pleaded and proved did not involve prohibited acts." Id. Although the wage agreement that the defendant had with its workers appears to be illegal and violative of the public policy embodied in §§ 31-53 and 31-71b, the contract between the plaintiff and the defendant did not require any acts prohibited by the prevailing wage statutes.[11]

As the purpose of the contract was legal, enforcing it by way of an arbitration award would not violate public policy. Indeed, failure to enforce the contract would be much more frustrating of public policy.[12] Allowing

[11] General Statutes § 31-53 (a) requires the insertion of a prevailing wage clause in a contract covered by the statute. We do not know why that provision was not inserted into this contract; however, such a clause would not change our reasoning. The principal purpose of the contract was the rendering of certain subcontracting services with the payment of wages being merely incidental to that purpose.

[12] Connecticut has a remedy against an employer who fails to pay the prevailing wage. General Statutes § 31-71g provides for fines and imprisonment for such violations. General Statutes § 31-72 also provides for civil actions by or on behalf of employees to collect unpaid wages and reasonable attorney's fees.

the plaintiff to escape liability after breaching the contract would mean that it would not be required to produce the very funds that the defendant and its employees relied on for payment of the prevailing wages. Such a result would work an unjustified forfeiture to the defendant and provide a windfall for the plaintiff.

The judgment is reversed and the case is remanded with direction to render judgment denying the application to vacate.[13]

In this opinion the other judges concurred.

---

[13] There is no application to confirm the award in the file.