[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case arises out of an arbitration award, issued March 18, 1994, in which the arbitrator awarded the plaintiff, Total Concept/New York, Inc. (TCI), $206,801.23 on a contract the plaintiff entered into with the defendant, AIG Financial Products Corp. (AIG), for the services of the plaintiff in the conversion of a building in Westport, Connecticut to provide a trading floor and offices for the defendant. On May 6, 1994, the plaintiff filed a motion to confirm the arbitration award. The defendant, on June 14, 1994, filed a motion to vacate the arbitration award on the grounds that the award violates public policy in that it requires the payment of fees to a corporation that has not been licensed to provide architectural services, in violation of General Statutes § 20-290, and that, pursuant to General Statutes § 52-408, the arbitration agreement is invalid because the contract containing the agreement is illegal and against public policy.
The court, Mottolese, J., in its memorandum of decision dated November 8, 1994, determined that the scope of review of an arbitral award based upon a violation of public policy is "strictly circumscribed," however, under 52-408 the court may determine the CT Page 10926 validity of the agreement to arbitrate in order to establish subject matter jurisdiction.
The issue now before the court is whether the contract containing the arbitration agreement is illegal and void as being against public policy because it is in violation of General Statutes § 20-290[1] and thus deprives the arbitrator of subject matter jurisdiction under General Statutes § 52-408. The defendant argues that the plaintiff was engaged in the practice of architecture in violation of § 20-290 rendering the contract void. The plaintiff contends that it proved interior design services, and that the small amount of architectural work required was performed by a licensed Connecticut architect.
"[I]t is unquestionably the general rule, upheld by the great weight of authority, that no court will lend its assistance in any way toward carrying out the terms of a contract, the inherentpurpose of which is to violate the law. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged right directly springing from such contract. . . ." (Emphasis in original; Internal quotation marks omitted.) Haynes Construction v. Cascella Son Construction,36 Conn. App. 29, 39, 647 A.2d 1015 (1994). The "practice of architecture" is defined by General Statutes § 20-288(3) as "rendering or offering to render of service by consultation, investigation, evaluations, preliminary studies, plans, specifications and coordination of structural factors concerning the aesthetic or structural design and contract administration of building construction or any other service in connection with the designing or contract administration of building construction located within the boundaries of this state, regardless of whether such persons are performing one or all of these duties or whether they are performing them in person or as the directing head of an office or organization performing them."
The agreement entered into by the plaintiff and defendant stated that its purpose was "[t]o provide Interior Design Services . . . ." Furthermore, Article 13.2 of the agreement provides that the plaintiff shall be referred to as the designer. The Managing Director of the project, Norman Di Chiara, testified that the plaintiff specialized in interior design for trading floors, and that this was such a project. Di Chiara also testified that at the inception of the project a Connecticut architect, Larry Michaels, was hired to perform the architectural services required. This is CT Page 10927 also reflected in the agreement which in Article 1, Phase V(H), provides that the plaintiff will provide the coordination services with Michaels.
After receiving a complaint by the defendant that the agreement violated §§ 20-290 and 20-298b, the Architectural Licensing Board (board), reviewed the agreement and declined to take any action against the plaintiff or Michaels. The board, in a letter to Michaels, stated that "you demonstrated that you were in direct supervisory control of the preparation of the documents you signed and sealed." The board also determined that the plaintiff violated General Statutes § 20-298b by offering to provide architectural services without a certificate of authorization, however, from the evidence before the court, it has not been demonstrated that the primary intent of the contract was to provide architectural services rather than design services. The architect consulted by the board's investigator, although concluding that the services offered were architectural, also makes reference to the disagreement between architects and interior designers as o what services are architectural and what services are design. The plaintiff, in a letter to the board's investigator, stated that the vast majority of the project consisted of interior design services, and the architectural services required were performed by Michaels, a licensed Connecticut architect. This was echoed by Di Chiara's testimony. Furthermore, although Di Chiara acknowledged that the project was an extensive and complex job, the mere size of a project does not require the conclusion that it is architectural in nature.
From the evidence provided, it has not been shown that the inherent purpose of the agreement entered into between the plaintiff and the defendant was to violate the law, but rather to provide interior design services. Therefore, the agreement is not illegal, and the arbitrator had subject matter jurisdiction to entertain the case.
As it has been established that the arbitrator had subject matter jurisdiction, the court must now consider the award of the arbitrator. "In deciding whether the arbitrators have exceeded their power under § 52-418(a)(4), we compare the award with the submission to determine if the award and the submission conform."International Association of Fire Fighters v. City of Waterbury,35 Conn. App. 775, 779, 647 A.2d 361 (1994). "[I]n determining whether an arbitrator has exceeded his authority . . . the courts need only examine whether the award conforms to the submission . . . . CT Page 10928 Under an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review that evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . ." (Citations omitted.)American Universal Ins. Co. v. DelGreco, 205 Conn. 178, 187,530 A.2d 171 (1987).
The award of the arbitrator does not mention the issue of the legality of the agreement, however, the parties have stipulated that the arbitrator considered the issue, ruled that he had jurisdiction and proceeded with the case. In a similar situation, in Nathan v. United Jewish Center of Danbury. Inc., 20 Conn. Sup. 183,188 (Super.Ct. 1955), the court stated that "[w]hether or not the plaintiff practiced architecture in this state was a question of fact. The arbitrator has not specifically made such a finding in his award but no other reasonable construction can be drawn from his application of the law and his conclusion that it would be contrary to public policy to permit recovery for services rendered by him in this state over a period of two years for acts expressly prohibited by statute." Similarly, in this case the arbitrator does not make a finding in his award that the contract was legal, however, the fact that the arbitrator awarded the plaintiff the amount due on the contract permits no other conclusion.
The defendant also maintains that enforcement of the award would violate public policy.
"An arbitration award that violates public policy may be vacated but only when the award is clearly illegal or clearly violative of strong public policy. . . . This is so [i]n light of the strong public policy that favors arbitration. . . . Parties cannot expect an intervening arbitral award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them." (Citations omitted; internal quotation marks omitted.) Haynes Construction v. Cascella SonConstruction, supra, 36 Conn. App. 39.
The agreement entered into between the plaintiff and defendant is not illegal, and therefore, not against public policy. Accordingly, the plaintiff's motion to confirm the arbitration award is granted and the defendant's motion to vacate the arbitration award is denied.
DEAN, J. CT Page 10929