**ALEXANDER JULIAN, INC.,**
**Respondent–Appellant,**

v.

**MIMCO, INC. (d/b/a William Barry),**
**Petitioner–Appellee.**

**Docket No. 01–7621.**

United States Court of Appeals,
Second Circuit.

Feb. 19, 2002.

Stephen C. Pascal, Silverberg, Stonehill & Goldsmith, P.C., New York, NY, for Appellant.

Steven R. Miller, Jaffe, Segal & Ross, New York, NY, for Appellee.

Present POOLER, and SOTOMAYOR, Circuit Judges, KAPLAN, District Judge.*

## SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of said District Court be and it hereby is AFFIRMED.

Mimco, Inc. appeals from the April 12, 2001, order of the United States District Court for the Southern District of New York (Chin, *J.*) denying Mimco's application to vacate an arbitration award entered against it and granting Alexander Julian Inc.'s ("Julian") application to confirm the award. For the reasons given below, we affirm.

Julian and Mimco entered into an agreement in September 1997, granting Mimco an exclusive license to use certain trademarks owned by Julian. A dispute over Mimco's payments under the licensing agreement arose. Julian served Mimco with a demand for arbitration in accordance with the licensing agreement in July 1999. Julian also served Mimco with a notice terminating the license agreement in October 1999. Mimco questioned whether the license termination was proper.

The parties and arbitrators attended a pre-arbitration conference on February 11, 2000. Mimco's counsel at the hearing, Mitchell Kaplan, states he explained to the panel that Kenneth R. Schachter of the law firm Silverberg, Stonehill and Goldsmith would defend Mimco at the arbitration hearing. Kaplan states he told the panel Schachter had two separate trials scheduled to begin in March 2000, including a trial in the Eastern District of New

York scheduled to start March 13, 2000, and suggested May 2000 as an alternate date for the hearings. Julian (and the arbitrators) insist Kaplan attempted to have the arbitration hearings scheduled for summer 2000. Regardless, Julian and the arbitrators appear to have insisted on March. One of the arbitrators stated during the March 13, 2000, hearing, "[t]here was a conflict for everybody else at one point or another, and as I recall, it was August before we could locate any free time, so it wasn't a two-week delay, it was much more like a five-month delay and would have put us a year after the initiation of arbitration before the first evidentiary hearing will be held." The arbitrators, over Kaplan's objection, selected March 13, 2000, as the opening day of arbitration, with March 14 and April 3, 2000, as the continuation dates.

Schachter wrote to the American Arbitration Association on February 15 and February 17, 2000, asking the case administrator to forward his request to the panel that the first two days of the hearing be adjourned because of his scheduling conflict. The arbitration schedule remained the same. On the first scheduled day of the hearing—March 13, 2000—Walter Jeram, an associate from Schachter's office, appeared. He again asked the panel to adjourn the case. When the panel refused, he left.

Schachter appeared in federal court as scheduled at 9 a.m. on March 13, 2000. Julian argues he was not actually engaged on that date, as the parties in Schachter's federal action, *Lee v. Picower Institute*, 98 Civ 5472 (E.D.N.Y. filed Aug. 7, 1998), told the court in a letter dated March 9, 2000, that they had settled. Schachter states

---

* The Honorable Lewis A. Kaplan, United States District Court Judge for the Southern District of New York, sitting by designation.

that because the settlement was not finalized, the judge refused to mark the case off the trial calender. On March 13, 2000, Schachter states Judge Spatt was persuaded, after hearing from counsel in court, to mark the case settled. Mimco argues Schachter could not appear at the arbitration after his case was marked settled on March 13 because the arbitration had already commenced. Further, with the judge refusing to mark the case off, Schachter argues he had to prepare for trial in his federal court case and could not prepare for arbitration at the same time.

The March 13, 2000, arbitration commenced without Mimco. The panel adjourned the scheduled March 14 hearing to April 3 to permit Julian time to secure additional evidence. Julian subpoenaed records from Mimco. Jeremy Bell, another associate, appeared at the April 3, 2000, hearing to deliver the subpoenaed documents, but left the hearing after delivering the documents. The hearing ended April 3, 2000, without the presentation of evidence from Mimco.

The arbitration panel delivered its award in May 2000. The arbitrators said they refused to delay the arbitration because Julian argued any delay would be highly prejudicial, as the disagreement over whether the license was properly terminated prevented Julian from awarding the license to another manufacturer. Further, the arbitrators reasoned Mimco could have found alternate counsel in the month before the hearing. The panel held Mimco in breach, awarded Julian $842,000 plus interest and terminated the license.

On May 11, 2000, Mimco filed a petition pursuant to CPLR § 7511 in New York Supreme Court seeking to vacate the arbitration award. On June 1, 2000, Julian timely filed a notice of removal to the United States District Court for the Southern District of New York, along with a cross-petition to confirm the award. The district court denied the petition to vacate and granted the cross-petition to confirm. This appeal followed.

"The showing required to avoid summary confirmation of an arbitration award is high, and a party moving to vacate the award has the burden of proof." *Willemijn Houdstermaatschappij, B.V. v. Standard Micro. Corp.*, 103 F.3d 9, 12 (2d Cir.1997) (citations omitted). Further, "arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Id.* (citations omitted). Legal conclusions made by a district court confirming an arbitration award are reviewed *de novo*, while findings of fact are reviewed for clear error. *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir.1997).

■ Federal courts may vacate an arbitration award if "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3).

This case turns on the standard of review, as the tremendous amount of discretion vested in the arbitrators leaves us with little choice but to affirm their findings. Mimco first argues scheduling the arbitration for the same day its attorney needed to be in federal court falls under the rubric of "any other misbehavior by which the rights of any party have been prejudiced" and is thus considered miscon-

duct under 9 U.S.C. § 10(a)(3). Mimco cites no case to support this proposition. Generally, "[c]ourts have interpreted section 10(a)(3) to mean that except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir.1997). "Misconduct typically arises where there is proof of either bad faith or gross error on the part of the arbitrator." *Bisnoff v. King*, 154 F.Supp.2d 630, 637 (S.D.N.Y.2001) (citations omittted). We cannot say it is fundamentally unfair for the arbitrators to have set the arbitration hearing dates for the exact dates Mimco's counsel was unavailable. Mimco had ample notice of the arbitrators' decision to hold the arbitration on the appointed days and could have substituted counsel from Schachter's firm, or chosen alternate representation. Schachter could also have asked Judge Spatt for an adjournment of the date set for jury selection after learning of the conflict with the arbitration hearing. Notwithstanding the availability of these options, Schachter chose not to appear at the arbitration hearing, without taking precautions against prejudicing the interests of his client. The arbitrators made clear that due to other scheduling conflicts, the hearing could be heard on these three days or not until August, a delay the arbitrators deemed unacceptable. Finally, Mimco simply failed to sustain its burden of proof by showing the arbitration so complex that representation by anyone other than its designated attorney would be fundamentally unfair.

■ We must also agree with the district court that the arbitrators had "at least a barely colorable justification" for denying Mimco's request for an adjournment. "The granting or denying of an adjournment falls within the broad discretion of appointed arbitrators." *Tempo Shain*, 120 F.3d at 18. "In evaluating an arbitrator's decision to deny a postponement, courts consider whether there existed a reasonable basis for the arbitrator's decision and whether the denial created a 'fundamentally unfair' proceeding." *Bisnoff*, 154 F.Supp.2d at 637. "A fundamentally unfair proceeding may result if the arbitrators fail to 'give each of the parties to the dispute an adequate opportunity to present its evidence and argument.'" *Id.* Arbitrators "need not follow all the niceties observed by the federal courts. [They] need only grant the parties a fundamentally fair hearing." *Id.* (quotations and citations omitted). Here, as the district court noted, the arbitrators were entitled to credit Julian's insistence that it would be prejudiced by a delay. Further, Mimco had ample opportunity for representation at the hearing. It chose to protest the arbitrators' decision by not putting on a defense. It could have chosen to lodge a vigorous protest about the scheduling while putting on a defense using alternate counsel. Its failure to proceed does not make the hearings fundamentally unfair.

We have examined the remainder of Mimco's arguments and find them without merit.