# CITY OF BRIDGEPORT *v.* THE KASPER GROUP, INC.
## (SC 17470)

Sullivan, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued October 26, 2005—officially released June 6, 2006

*Richard F. Wareing*, with whom was *Gary F. Sheldon*, for the appellant (defendant).

*Jason M. Kuselias*, with whom, on the brief, were *Craig A. Raabe* and *Patrick J. Sweeney*, for the appellee (plaintiff).

*Opinion*

KATZ, J. The defendant, The Kasper Group, Inc., appeals from the judgment of the trial court granting the application of the plaintiff, the city of Bridgeport, to vacate an arbitration award under General Statutes

§ 52-418 (a) (3),[1] claiming that the trial court improperly determined that the arbitrator had committed misconduct in denying the plaintiff's motions to stay the proceedings and to submit additional evidence. We conclude that the trial court properly determined that the arbitrator had committed misconduct in refusing to consider pertinent and material evidence and, therefore, we affirm the trial court's judgment.

The record reveals the following facts and procedural history. In 1998, the Bridgeport city council, desiring to construct a new elementary school, adopted a resolution establishing a school building committee (committee) to develop plans and specifications for the construction of the new West Side School and to apply for state grants to defray the construction costs. The committee invited professional design firms, including the defendant, to present proposals for the design of the new school. About one month after the defendant had presented its proposal, the committee notified the defendant that it had been selected as the design firm for the West Side School. The plaintiff attached to the notification a draft contract. Over the next few months, the parties negotiated the terms of the contract. On February 24, 2000, the defendant signed the contract, but a representative of the plaintiff never subsequently signed the contract.

On December 19, 2000, the committee, acting through its construction manager, notified the defendant that the scope of the project had changed because the num-

---

[1] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award . . . (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced . . . ."

ber of grades that the new school would serve was increased from kindergarten through sixth grade to kindergarten through eighth grade. Due to the magnitude of the change, the committee decided to repeat the proposal and selection process for a design firm. In response to the committee's decision, the defendant instituted an action seeking to enjoin the plaintiff from taking any further action to terminate the alleged contract and from soliciting new proposals. In addition, the defendant sought damages under theories of breach of express or implied contract, as well as breach of the implied covenant of good faith and fair dealing. The plaintiff subsequently filed a motion to stay the action on the basis of the alleged contract's arbitration provision, which requires the parties to arbitrate disputes that arise in connection with the contract. Before the trial court ruled on the plaintiff's motion to stay, the parties agreed to submit the dispute to the American Arbitration Association for resolution under the construction industry arbitration rules. In the submission, the parties agreed that the dispute to be resolved included the claims raised by the defendant in its complaint, and, alternatively, a claim for unjust enrichment. In addition, the parties agreed in the submission that if a contract did exist, it was the one dated February 24, 2000, that the defendant had signed.

In accordance with the submission, the dispute was submitted to arbitration. The arbitration proceedings began in June, 2001, and consisted of twelve days of hearings spanning nearly nineteen months. During the arbitration, the plaintiff claimed that, if a contract existed, it was void ab initio because it had been procured by illegal means. The undisputed fact underpinning this defense was that, just prior to the start of the arbitration proceedings, Paul Pinto, who owned 99 percent of the shares of the defendant when it was awarded the West Side School project, had entered into

a plea agreement with the United States Attorney for the District of Connecticut, admitting, in part, to having engaged in a bribery and kickback scheme with an elected official, then Bridgeport mayor Joseph Ganim, to obtain Bridgeport municipal contracts. In support of its defense that the contract was void ab initio, the defendant submitted into evidence copies of the information charging Pinto and his plea agreement, along with a copy of Ganim's criminal indictment. The plaintiff sought to compel Pinto to testify during the arbitration proceedings, but his attorney represented to both parties that Pinto would refuse to testify in accordance with his right to avoid self-incrimination under the fifth amendment to the United States constitution. In the absence of Pinto's testimony, the parties and the arbitrator agreed that the plaintiff would submit an offer of proof suggesting adverse inferences that the arbitrator could draw from Pinto's refusal to testify. On January 31, 2003, pursuant to that agreement, the plaintiff submitted its offer of proof, and on February 7, 2003, the defendant submitted a memorandum of law in opposition to that offer of proof.

Ganim's criminal trial started after the arbitration proceedings at issue in the present case had begun. On February 11, 2003, approximately two weeks after the last day of hearings in the arbitration, the plaintiff filed with the arbitrator a motion to stay the posthearing briefing schedule until the conclusion of testimony in the Ganim trial. Specifically, the plaintiff sought to supplement the record before the arbitrator with the testimony from Ganim's trial of certain of the defendant's employees, most notably Pinto, who already had testified at length regarding many of his illegal activities. The arbitrator denied this motion.

By agreement, both parties submitted their posthearing briefs on March 10, 2003. At the same time, the plaintiff also filed a motion to submit additional evi-

dence in the form of transcripts containing excerpts of Pinto's testimony in the Ganim criminal trial. The transcripts, submitted with the motion, contained excerpts of Pinto's testimony on February 6, 7, 10 and 19, 2003. On March 19, 2003, the defendant filed an objection to the plaintiff's motion, and, on April 16, 2003, the parties were notified that the arbitrator had denied the plaintiff's motion and had refused to consider Pinto's testimony.

On May 14, 2003, the arbitrator rendered an award in favor of the defendant and ordered the plaintiff to pay the defendant $155,507.36.[2] The arbitrator did not set forth his reasoning underlying the award. Pursuant to § 52-418, the plaintiff filed an application with the Superior Court to vacate the arbitrator's award. The defendant responded by filing both an objection to the plaintiff's application to vacate and its own motion, pursuant to General Statutes § 52-417, to confirm the arbitrator's award. After a hearing, the trial court granted the plaintiff's application to vacate the arbitrator's award on the ground that the arbitrator had committed misconduct under § 52-418 (a) (3) by denying both the plaintiff's motion to stay the proceedings and its subsequent motion to admit additional evidence at the end of the proceedings. This appeal followed.[3]

On appeal, the defendant claims that the trial court improperly determined that the arbitrator's denial of the plaintiff's motions had constituted misconduct under § 52-418 (a) (3). Specifically, the defendant contends that it was not misconduct for the arbitrator to refuse to consider Pinto's testimony because it was

---

[2] The arbitrator broke down the award as follows: $60,535.72 in contract damages; $53,512.79 in employee carrying costs; $37,500 in attorney's fees; and $3958.85 in collection costs.

[3] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

irrelevant and, even if it were relevant, the testimony was cumulative of what had been proffered in the plaintiff's offer of proof. The defendant further contends that the arbitrator's refusal to consider Pinto's testimony was appropriate because its minimal probative value was outweighed by other considerations. Finally, the defendant contends that the exclusion of Pinto's testimony did not deprive the plaintiff of a full and fair opportunity to develop its defense that the contract was void because it was procured illegally.[4]

In response, the plaintiff claims that Pinto's testimony was relevant to its defense that the contract had been procured illegally. The plaintiff also claims that Pinto's testimony was relevant to rebut the defendant's argument that a prior course of dealing, namely, a long history between the parties of legally obtained contracts, had been established. In particular, the plaintiff contends that one of the prior contracts between the parties on which the defendant relies to establish the prior course of dealing was identified in Pinto's testimony as having been procured illegally. The plaintiff further claims that the arbitrator's denial of its motions deprived it of a full and fair hearing because Pinto had

---

[4] The defendant also claims that the trial court improperly vacated the award because the arbitrator properly could have resolved the dispute in its favor without referring to Pinto's testimony based on its counts of either breach of an implied in fact contract or unjust enrichment. It is well established, however, that "an express contract between the parties precludes recognition of an implied-in-law contract governing the same subject matter"; (internal quotation marks omitted) *Meaney* v. *Connecticut Hospital Assn.*, 250 Conn. 500, 517, 735 A.2d 813 (1999); and that "lack of a remedy under the contract is a precondition for recovery based upon unjust enrichment"; *Gagne* v. *Vaccaro*, 255 Conn. 390, 401, 766 A.2d 416 (2001), on appeal after remand, 80 Conn. App. 436, 835 A.2d 491 (2003), cert. denied, 268 Conn. 920, 846 A.2d 881 (2004). Because the trial court's decision vacating the award, which was based on a finding of an operative contract and which we affirm, creates another opportunity for a determination on the contract, we do not address these additional claims.

refused to testify in the arbitration proceedings and his testimony at the criminal trial was highly incriminating.[5]

Finally, the plaintiff asserts two alternate grounds on which the trial court's judgment should be affirmed. First, the plaintiff contends that enforcing the arbitrator's award would violate the public policy against binding a municipality on the basis of the unauthorized acts of its agents. Second, the plaintiff contends that the award also violates the public policy against the enforcement of illegal contracts.[6] We agree with the plaintiff that it was deprived of a full and fair hearing because Pinto's testimony at the criminal trial was highly incriminating and instrumental to its defense that the contract was void because it had been procured illegally.

We begin with a restatement of the principles that guide our review of a trial court's judgment vacating an arbitration award. "This court has for many years wholeheartedly endorsed arbitration as an effective

[5] We note that the plaintiff contends that the arbitrator's denials of its motion to stay the proceedings and its motion to admit additional evidence were each separate acts of misconduct requiring the vacation of the award. The plaintiff does not contend, however, that it was prejudiced in any way by the arbitrator's denial of its motion to stay other than by the arbitrator's refusal to consider Pinto's testimony. We, therefore, need not address separately the claim that the arbitrator's denial of the plaintiff's motion to stay was misconduct because the purpose of the stay was to provide the plaintiff with time to obtain Pinto's testimony from the Ganim trial for inclusion in the arbitration record, but in fact the plaintiff was able to do so prior to the close of the hearings.

[6] In response to these claims, the defendant asserts that, even if we conclude that the arbitrator committed misconduct or that the award violated public policy, the trial court nevertheless improperly vacated the arbitrator's award with respect to attorney's fees, arbitration fees, and costs of collection. We disagree, in the absence of anything in the trial court's decision that would suggest that these fees and costs were anything other than damages flowing from the contract award, which we conclude properly was vacated. With respect to the plaintiff's public policy claims, because we conclude that the trial court properly granted the plaintiff's application to vacate the arbitration award, we need not address the alternate grounds for affirmance.

alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation. . . . When arbitration is created by contract, we recognize that its autonomy can only be preserved by minimal judicial intervention. . . . Because the parties themselves, by virtue of the submission, frame the issues to be resolved and define the scope of the arbitrator's powers, the parties are generally bound by the resulting award. . . . Since the parties consent to arbitration, and have full control over the issues to be arbitrated, a court will make every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings. . . . The party challenging the award bears the burden of producing evidence sufficient to invalidate or avoid it . . . ." (Citations omitted; internal quotation marks omitted.) *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 145–46, 523 A.2d 1271 (1987). "[W]e have . . . recognized three grounds for vacating an [arbitrator's] award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418." (Citations omitted.) *Garrity* v. *McCaskey*, 223 Conn. 1, 6, 612 A.2d 742 (1992).

"[A]rbitrators are accorded substantial discretion in determining the admissibility of evidence, particularly in the case of an unrestricted submission, which relieve[s] the arbitrators of the obligation to follow strict rules of law and evidence in reaching their decision. . . . Indeed, it is within the broad discretion of arbitrators to decide whether additional evidence is required or would merely prolong the proceedings unnecessarily. . . . This relaxation of strict evidentiary rules is both necessary and desirable because arbitration is an informal proceeding designed, in part, to avoid the complexities of litigation. Moreover, arbitra-

tors generally are laypersons who bring to these proceedings their technical expertise and professional skills, but who are not expected to have extensive knowledge of substantive law or the subtleties of evidentiary rules." (Citations omitted; internal quotation marks omitted.) *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, supra, 203 Conn. 148–49.

A trial court's decision to vacate an arbitrator's award under § 52-418 involves questions of law and, thus, we review them de novo. *State* v. *AFSCME, Council 4, Local 1565*, 49 Conn. App. 33, 35, 713 A.2d 869 (1998), aff'd, 249 Conn. 474, 732 A.2d 762 (1999). General Statutes § 52-418 (a) (3) provides in relevant part that a trial court shall vacate an arbitrator's award "if the arbitrators have been guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy . . . ." In light of the well settled principles discussed previously, this court has stated that § 52-418 (a) (3) does not mandate "that every failure or refusal to receive evidence, even relevant evidence, constitutes misconduct. . . . To establish that an evidentiary ruling, or lack thereof, rises to the level of misconduct prohibited by § 52-418 (a) (3) requires more than a showing that an arbitrator committed an error of law. . . . Rather, a party challenging an arbitration award on the ground that the arbitrator refused to receive material evidence must prove that, by virtue of an evidentiary ruling, he was in fact deprived of a full and fair hearing before the arbitration panel." (Citations omitted.) *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, supra, 203 Conn. 149. The federal courts, in construing the nearly identical grounds for vacating an arbitration award under 9 U.S.C. § 10 (a) (3),[7] have held that an arbitration hearing

[7] Under 9 U.S.C. § 10 (a) (3), a District Court "may make an order vacating the award upon the application of any party to the arbitration . . . [w]here the arbitrators were guilty of misconduct in refusing to postpone the hearing,

is fair if the arbitrator gives "each of the parties to the dispute an adequate opportunity to present its evidence and argument." (Internal quotation marks omitted.) *Tempo Shain Corp.* v. *Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997), quoting *Hoteles Condado Beach* v. *Union De Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir. 1985); see also *Nationwide Mutual Ins. Co.* v. *Home Ins. Co.*, 278 F.3d 621, 625 (6th Cir. 2002). If the evidence at issue is merely cumulative or irrelevant, the arbitrator's refusal to consider it does not deprive the proffering party of a full and fair hearing. See *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, supra, 152; see also *Scott* v. *Prudential Securities, Inc.*, 141 F.3d 1007, 1017 (11th Cir. 1998), cert. denied, 525 U.S. 1068, 119 S. Ct. 798, 142 L. Ed. 2d 660 (1999); *Tempo Shain Corp.* v. *Bertek, Inc.*, supra, 20.

Additionally, to vacate an arbitrator's award on the ground of misconduct under § 52-418 (a) (3), the moving party must establish that it was substantially prejudiced by the improper ruling. *South Windsor* v. *South Windsor Police Union Local 1480, Council 15, AFSCME, AFL-CIO*, 57 Conn. App. 490, 506, 750 A.2d 465 (2000), rev'd on other grounds, 255 Conn. 800, 770 A.2d 14 (2001). This requirement that the moving party establish substantial prejudice is consistent with the showing that this court requires to order a new trial when a trial court makes an improper evidentiary ruling in a civil trial. See *Daley* v. *McClintock*, 267 Conn. 399, 403, 838 A.2d 972 (2004). In such cases, a new trial will be ordered only when the improper evidentiary "ruling

upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." This court previously has recognized that federal case law applying this statute is instructive because of the substantial similarity between the language of this statute and § 52-418 (a) (3). *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, supra, 203 Conn. 150 n.12.

[likely] would [have] affect[ed] the result." (Internal quotation marks omitted.) Id.

Federal case law considering whether an arbitrator's evidentiary ruling deprived a party of a fair hearing is consistent with requiring the moving party to demonstrate substantial prejudice to vacate an award on this ground. One federal court analogized to the standard of review accorded trial courts' evidentiary rulings and declined to vacate an arbitrator's award because "it cannot be said as a matter of law that [the excluded evidence] was decisive or that its exclusion was seriously harmful in the light of the other evidence in the case." *Newark Stereotypers' Union No. 18* v. *Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir.), cert. denied, 393 U.S. 954, 89 S. Ct. 378, 21 L. Ed. 2d 365 (1968); see also *Steiner* v. *Glenn*, United States District Court for the Northern District of Illinois, Docket No. 00C7645 (September 24, 2002) (refusing to vacate arbitrator's award because moving party did not establish that excluded evidence was central and decisive to disputed issue). Indeed, in the few instances in which federal courts have vacated an arbitrator's award on this ground, the arbitrator's evidentiary ruling had precluded the moving party from presenting evidence that was decisive and central to a disputed claim or defense. See, e.g., *Tempo Shain Corp.* v. *Bertek, Inc.*, supra, 120 F.3d 20–21; *Hoteles Condado Beach* v. *Union De Tronquistas Local 901*, supra, 763 F.2d 40.

For example, in *Hoteles Condado Beach* v. *Union De Tronquistas Local 901*, supra, 763 F.2d 36, a union filed a grievance challenging an employee's dismissal and the dispute subsequently was referred to arbitration. During the arbitration, the employer's sole witness to the act that had caused the employee's dismissal refused to testify. Id., 37. The employer therefore attempted to substitute the witness' live testimony with the transcript of the employee's criminal trial for the

same underlying conduct, at which the witness had testified. Id. The arbitrator, in rendering the award, refused to consider the transcript testimony. Id. The First Circuit Court of Appeals, in affirming the District Court's decision to vacate the arbitrator's award, noted that, other than the transcript, "no other evidence was available to substantiate or to refute the [employer's] charges that [the employee] had violated the rules regarding employment." Id., 40. Accordingly, the court determined that the "evidence effectively excluded by the arbitrator was both central and decisive to the [employer's] position; therefore, the arbitrator's refusal to consider this evidence was . . . so destructive of [the employer's] right to present [its] case, that it warrants the setting aside of the arbitration award." (Internal quotation marks omitted.) Id.; see also *Tempo Shain Corp.* v. *Bertek, Inc.*, supra, 120 F.3d 20–21 (vacating award because arbitrator refused to delay proceedings to allow testimony of party's sole witness with direct knowledge of disputed claim); *Hall* v. *Eastern Air Lines, Inc.*, 511 F.2d 663, 664 (5th Cir. 1975) (affirming District Court's judgment remanding case to arbitration because panel's refusal to consider evidence was not harmless as it would, if true, constitute complete defense to moving party's discharge); *Gallagher* v. *Schernecker*, 60 Wis. 2d 143, 145, 150–51, 208 N.W.2d 437 (1973) (affirming trial court's order vacating award because arbitrators prevented party from calling any witnesses).

Requiring the moving party to establish substantial prejudice by demonstrating that the decision excluded evidence that was decisive or likely to have altered the outcome of a claim is consistent with the principles underlying arbitration. "A party's choice to accept arbitration entails a trade-off. A party can gain a quicker, less structured way of resolving disputes; and it may also gain the benefit of submitting its quarrels to a

specialized arbiter . . . . Parties lose something, too: the right to seek redress from the courts for all but the most exceptional errors at arbitration." (Citation omitted.) *Dean* v. *Sullivan*, 118 F.3d 1170, 1173 (7th Cir. 1997).

We begin our analysis of whether, in the present case, the arbitrator's exclusion of the transcript of Pinto's testimony constituted misconduct, with a review of the evidence that was admitted into evidence in support of the plaintiff's defense that the West Side School contract had been procured illegally. First, the plaintiff submitted into evidence copies of the information charging Pinto along with his written plea agreement, in which he admitted that he had engaged in the conduct alleged in the information. The information charged Pinto with participating in a racketeering conspiracy involving the payment of kickbacks and bribes to an elected official to enrich himself and to obtain preferential treatment of his business interests. Specifically, the information alleged that Pinto had paid bribes and kickbacks to obtain municipal contracts relating to a wastewater treatment facility, a sports complex located in Bridgeport, and asbestos removal from municipal properties. In addition, Ganim's criminal indictment was admitted into evidence. In relevant part, the indictment alleged that Ganim, in exchange for money and gifts, had directed that contracts be awarded to the defendant for the construction of an arena and a baseball stadium in Bridgeport. The final piece of evidence before the arbitrator on this issue was Pinto's refusal to testify during the arbitration. As we have noted previously, pursuant to the agreement of the parties and the arbitrator, the plaintiff submitted an offer of proof suggesting specific adverse inferences that could be drawn from Pinto's refusal to testify, including the inference that Pinto's illegal activities in procuring municipal contracts had extended to the West Side School contract.

Thus, although the evidence produced during the arbitration proceedings did not directly identify the West Side School contract as being procured illegally, the evidence clearly was sufficient to prove that the defendant had received a number of municipal contracts as part of an illegal conspiracy. In addition, the arbitrator could have inferred from Pinto's invocation of his fifth amendment right not to testify in the arbitration that any such testimony would have been incriminating generally as well as with regard to the subject matter of the arbitration—the West Side School contract.[8] See *Olin Corp.* v. *Castells*, 180 Conn. 49, 53–54, 428 A.2d 319 (1980) (party's invocation of fifth amendment does not preclude drawing adverse inference from party's refusal to testify in civil trial); *Brink's, Inc.* v. *New York*, 717 F.2d 700, 707–10 (2d Cir. 1983) (concluding that trier of fact may draw adverse inference from refusal of party's employees to testify under fifth amendment). Nevertheless, as the arbitrator's award makes clear, he declined to infer from Pinto's refusal to testify that the West Side School contract was procured as part of the bribery and kickback scheme.

We now review Pinto's testimony at the Ganim trial, which the arbitrator refused to admit into evidence. In the most relevant parts, Pinto testified that, although he had had no experience or training as an architect, surveyor or engineer, he joined the defendant's firm, whose largest paying client at the time was the plaintiff. Pinto's main responsibility with the defendant was "just to interact with [Ganim], continue to get whatever city jobs the [defendant] was going after, and make sure that work continued to flow and do whatever is necessary to

---

[8] In February 1999, prior to the award of the West Side School contract, Pinto became a 99 percent shareholder of the defendant. In September, 1999, the plaintiff invited the defendant to make a presentation regarding the school and, in October, 1999, selected the defendant as the design firm for the West Side School project. In 2001, Pinto sold his interest in the defendant, but remained an employee.

take care of [Ganim] in various ways." He explained that "tak[ing] care" of Ganim meant "to spend money on, wine, dine, take out to dinner, buy merchandise, clothing, whatever needs he had, I was to take care of him." In return for taking care of Ganim, Pinto testified that he obtained the major municipal contracts for "the minor league baseball stadium, the indoor hockey arena . . . *and some school jobs*." (Emphasis added.) Pinto's "job was to do whatever [he] had to do to take care of [Ganim] in order to continue the flow of work to the [the defendant]." In addition to "tak[ing] care" of Ganim, Pinto also testified that he had raised more than $100,000 for Ganim through a political action committee. In return for raising this money, Pinto testified that he got "any job contract or outcome that I needed to get and I was successful in all of them." Finally, Pinto testified that, during the time period in which he was "tak[ing] care" of the mayor, "there was not a contract that we wanted or actively sought that we did not get."

On the basis of a comparison of Pinto's trial testimony with the evidence admitted at the arbitration, we conclude that Pinto's trial testimony was both relevant and not cumulative on the issue of whether the West Side School contract had been procured illegally. Evidence is relevant if it has "any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1. In the present case, Pinto's testimony, while not direct evidence that the West Side School contract was procured illegally, made it more likely that the arbitrator would have found that the contract had been procured illegally than without the testimony. Significantly, Pinto testified that, in return for bribes, the defendant had obtained "some school jobs" and any contract that Pinto actively sought or needed to acquire.

Evidence is not necessarily cumulative if it overlaps with evidence previously received and it obviously is not cumulative if it presents new information. See *State v. Parris*, 219 Conn. 283, 293, 592 A.2d 943 (1991); see also *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, supra, 203 Conn. 152 (evidence was cumulative because it did not provide arbitrator with any new information). Pinto's testimony was not cumulative because it provided the arbitrator with two new significant pieces of information supporting the plaintiff's defense that the contract was void.[9] First, Pinto testified that among the municipal contracts he had obtained in exchange for his bribes were "some school jobs." Second, Pinto testified that, in exchange for such bribes, he got "any job contract or outcome that I needed to get and I was successful in all of them," and that "there was not a contract that we wanted or actively sought that we did not get." Thus, contrary to the defendant's argument, Pinto's testimony was not cumulative of the offer of proof because the offer of proof was merely a *suggestion* of adverse inferences that could be drawn from Pinto's refusal to testify; it was not itself evidence of illegality. Therefore, the transcript excerpts provided evidence that was relevant and not cumulative.

---

[9] As we have noted previously herein, the plaintiff argues, alternatively, that Pinto's testimony was relevant to counter the defendant's argument that a prior course of dealing, namely, a history of legally obtained contracts, had been established between the parties. Specifically, the plaintiff observes that the defendant relies on its prior contract to build an arena in Bridgeport as establishing part of that prior course of dealing, but that Pinto's testimony identified that arena contract as having been awarded in exchange for bribes. Pinto's testimony, however, was not the only evidence that the arena contract had been procured through illegal means. In his plea agreement that the arbitrator did consider, Pinto admitted to having engaged in the conduct alleged in the information, which included the payment of bribes and kickbacks specifically in connection with the award of' the arena contract. Accordingly, Pinto's testimony regarding the illegal means by which the arena contract had been procured was cumulative of previously received evidence. We, therefore, conclude that the arbitrator did not deprive the plaintiff of a fair hearing by refusing to consider the testimony on that issue.

We next must determine whether the plaintiff substantially was prejudiced by the arbitrator's failure to consider Pinto's testimony. We conclude, upon a thorough review of the proffered transcript excerpts of Pinto's testimony, that the plaintiff was substantially prejudiced by the arbitrator's refusal to consider the testimony because it was highly probative and very likely would have altered the outcome of the arbitration had it been introduced. See *Hoteles Condado Beach* v. *Union De Tronquistas Local 901*, supra, 763 F.2d 40 (vacating arbitrator's award because evidence excluded was " 'central and decisive' " to proffering party's claim).

Although Pinto's refusal to testify in the arbitration coupled with the documentary evidence, including Pinto's information and plea agreement and Ganim's indictment, *could* have provided a basis for drawing an inference that the West Side School contract was awarded as part of a kickback and bribery scheme between Pinto and Ganim, the arbitrator also reasonably could have rejected such an inference because only certain specific contracts that had been procured illegally were identified in those documents, none of which were related to school contracts. Conversely, Pinto's testimony would have made the conclusion that he illegally had procured the West Side School contract very likely. At the very least, his testimony very "[likely] would [have] affect[ed] the result" of the arbitration had it been introduced. (Internal quotation marks omitted.) *Daley* v. *McClintock*, supra, 267 Conn. 403. Indeed, to consider the testimony and conclude otherwise, an arbitrator would have to find that, although Pinto's job was to do whatever he had to do in order to continue the flow of work to the defendant, that Pinto had engaged in a widespread corruption scheme that resulted in him getting *every* contract he wanted, and that Pinto had procured major municipal contracts, including "some

school jobs,"[10] the scheme nevertheless did not extend to the one contract at issue in this case. Such a conclusion, however, contravenes both logic and common sense. Accordingly, we conclude that the trial transcript was so central to the plaintiff's case that the arbitrator's failure to consider it was misconduct.[11]

We recognize that, if the arbitrator had admitted Pinto's testimony, the arbitrator would have been required to allow the defendant additional time to examine and respond to this new evidence,[12] with the potential for

[10] Patrick M. Rose, the defendant's senior vice president, testified during the arbitration hearing that, in addition to the West Side School, the defendant had worked on both the Marin School and the Madison School in Bridgeport as well as a regional vocational agricultural school.

[11] The adverse inference that the arbitrator permissibly could have drawn from Pinto's refusal to testify in this case does not undermine our conclusion and, indeed, adds very little to the picture when compared with his trial testimony. Because Pinto had not yet either been sentenced pursuant to his guilty plea or testified in Ganim's trial, he had every incentive not to testify in this case and thereby potentially risk jeopardizing his plea deal. Nor does the absence of any evidence of Ganim's involvement in the selection of the defendant for the West Side School project eliminate the likelihood that Pinto's testimony would have altered the outcome, or undermine our determination that the exclusion of Pinto's testimony was "seriously harmful in the light of the other evidence in the case." *Newark Stereotypers' Union No. 18* v. *Newark Morning Ledger Co.*, supra, 397 F.2d 599. Everything else considered by the arbitrator merely suggested that adverse inferences could be drawn regarding the contract at issue; *only* Pinto's testimony was itself direct evidence of illegality regarding school contracts.

[12] Arbitration is a creature of contract and in that contract the parties can agree to the rules under which an arbitrator will decide the dispute. See *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 248 Conn. 108, 121, 728 A.2d 1063 (1999). In the present case, the parties' submission to arbitration included a provision under which the parties had agreed to arbitrate the dispute in accordance with the construction industry arbitration rules of the American Arbitration Association. Under those rules, if evidence is submitted after the conclusion of the hearing, "[a]ll parties *shall* be afforded an opportunity to examine and respond to such documents or other evidence." (Emphasis added.) American Arbitration Association, Construction Industry Dispute Resolution Procedures (1999 Ed.) rule R-32, pp. 28–29.

reopening these already protracted proceedings.[13] In light of the strong probative value of Pinto's testimony and the fact that the plaintiff consistently sought to bring this testimony to the arbitrator's attention over a period of several months, first by seeking a continuance and thereafter by attempting to submit a transcript months before the arbitrator's decision actually was reached, we cannot conclude that an additional delay beyond the arbitrator's May, 2003 decision was a proper reason to ignore the transcript, particularly in the absence of any significant prejudice to the defendant's ability to rebut the testimony. See *Tempo Shain Corp.* v. *Bertek, Inc.*, supra, 120 F.3d 18 (concluding that arbitral panel committed misconduct by declining to hold proceedings open to allow testimony of crucial witness who was willing to testify but unavailable for indeterminate period); cf. *Alexander Julian, Inc.* v. *Mimco, Inc.*, 29 Fed. Appx. 700, 703 (2d Cir. 2002) (concluding that arbitrator did not commit misconduct in denying adjournment because opposing party may have been prejudiced by delay in concluding proceedings); *Riddle* v. *Wachovia Securities, LLC*, United States District Court for the District of Nebraska, Docket No. 8:05CV87 (December 12, 2005) (determining that arbitrator did not commit misconduct in refusing to grant party's motion for continuance when arbitrator possibly could have concluded that opposing party would be unfairly prejudiced because arbitration already pending for one year).

In reviewing the arbitrator's refusal to consider Pinto's testimony, we are mindful of the primary goal of arbitration, which is to provide "the efficient, economical and expeditious resolution of private disputes." *Wu* v. *Chang*, 264 Conn. 307, 313, 823 A.2d 1197 (2003).

---

[13] We question, however, in light of Pinto's refusal to testify in the first instance, the extent, if at all, to which he would have responded to that evidence.

Undue judicial intervention inevitably could judicialize the arbitration process and thereby defeat the objective of providing an alternative to judicial dispute resolution. Therefore, we do not superintend arbitration proceedings. We also are mindful, however, that the arbitration under review is complicated by the fact that it involves public funds and the question of whether the city had a full and fair opportunity to contest the use of such funds for purposes of illegal dealings. Although we do not advocate different rules to govern such arbitrations, we must remain vigilant in ensuring that the efficiency and economics generally associated with arbitrations do not swallow the public interest that has been compromised as a result of the arbitrator's misconduct. We therefore conclude that the trial court properly determined that the arbitrator's refusal to consider Pinto's testimony was misconduct requiring that it vacate the arbitrator's award under § 52-418 (a) (3).

The judgment is affirmed.

In this opinion SULLIVAN, C. J., and BORDEN and PALMER, Js., concurred.

VERTEFEUILLE, J., dissenting. I agree with the majority that the testimony of Paul Pinto was both relevant and not cumulative. I disagree, however, with the majority's conclusion that the arbitrator's exclusion of Pinto's testimony substantially prejudiced the defendant, The Kasper Group, Inc. In my view, the exclusion of Pinto's testimony, in light of the other evidence, did not substantially prejudice the plaintiff, the city of Bridgeport, and, accordingly, I conclude that the arbitrator's decision to exclude this evidence was not misconduct. Because I conclude that the arbitrator did not commit misconduct, I, unlike the majority, would reach the plaintiff's argument that the trial court's judgment should be affirmed on the alternate grounds that

the enforcement of the arbitration award would violate public policy. Nevertheless, I conclude that both of the plaintiff's alternate grounds to affirm the trial court's judgment lack merit. I therefore respectfully dissent and would reverse the judgment of the trial court and remand the case to that court with direction to grant the defendant's application to confirm the arbitration award and to deny the plaintiff's application to vacate the arbitration award.

I

At the outset, I note my agreement with the majority's determination that substantial prejudice arises if the excluded evidence would have been likely to alter the outcome if it had been introduced. See *Daley* v. *McClintock*, 267 Conn. 399, 403, 838 A.2d 972 (2004) (new civil trial required only when trial court's evidentiary "ruling [likely] would [have] affect[ed] the result"); *Hoteles Condado Beach* v. *Union De Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1985) (vacating arbitrator's award because evidence excluded was "central and decisive" to proffering party's claim). I disagree, however, with the majority's application of this rule to the present case. The majority concludes that Pinto's testimony "very likely" would have altered the outcome of the arbitration because he had testified in a related criminal trial against the plaintiff's then mayor, Joseph Ganim, that: (1) it was his job to do whatever he had to do in order to continue the flow of work to the defendant; (2) he had engaged in a widespread corruption scheme that resulted in him getting every contract he wanted; and (3) he had procured major municipal contracts including "some school jobs." I disagree with the majority's conclusion because the prejudice of excluding evidence cannot be determined in a vacuum, but must be evaluated in light of the other evidence that was before the arbitrator. See *Newark Stereotypers' Union No. 18* v. *Newark Morning Ledger Co.*, 397

F.2d 594, 599 (3d Cir.) (declining to vacate arbitrator's award because "it cannot be said as a matter of law that [the excluded evidence] was decisive or that its exclusion was seriously harmful *in the light of the other evidence in the case*" [emphasis added]), cert. denied, 393 U.S. 954, 89 S. Ct. 378, 21 L. Ed. 2d 365 (1968); see also *Vasquez* v. *Rocco*, 267 Conn. 59, 71–72, 836 A.2d 1158 (2003) (in determining whether improperly excluded evidence was harmful, "we necessarily must view that impropriety in the context of the totality of the evidence adduced at trial"). I conclude, for several reasons, that Pinto's testimony, viewed in light of the other evidence, does not make it likely that the arbitrator would have determined that the plaintiff met its burden in establishing that the West Side School contract was procured illegally.

First, there was no evidence at all offered during the arbitration showing that Ganim was involved in any way with the award of the West Side School contract to the defendant.[1] The lack of evidence regarding Ganim's

---

[1] Unlike the cases the majority discusses in which the arbitration award was vacated because of the arbitrator's decision to exclude certain evidence, Pinto's testimony was not the *only* possible source of evidence that the West Side School contract was procured illegally. For example, in *Tempo Shain Corp.* v. *Bertek, Inc.*, 120 F.3d 16, 20–21 (2d Cir. 1997), the court vacated the arbitration award because the arbitration panel denied the party challenging the award the opportunity to present the testimony of its *only* witness with knowledge of the alleged misrepresentations that were the basis of the parties' dispute. Likewise, in *Hoteles Condado Beach* v. *Union De Tronquistas Local 901*, supra, 763 F.2d 36–37, 40, the court vacated the arbitration award ordering the employer to reinstate its terminated employee because the arbitrator refused to consider the transcript of the prior testimony of the employer's *only* witness to the conduct that allegedly justified its dismissal of the employee. See also *Hall* v. *Eastern Air Lines, Inc.*, 511 F.2d 663, 664 (5th Cir. 1975) (affirming decision vacating award upholding moving party's discharge from employment because board refused to consider moving party's evidence of his defense which would, if true, be complete defense to his discharge); *Gallagher* v. *Schernecker*, 60 Wis. 2d 143, 150–51, 208 N.W.2d 437 (1973) (affirming trial court's order vacating award because arbitrators excluded all of moving party's witnesses).

In the present case, the plaintiff's claim that the contract was void ab initio was based on the theory that, as part of a bribery and kickback scheme,

involvement is revealing in light of Pinto's testimony that Ganim was responsible for selecting the defendant for each of the major municipal projects that he had obtained in return for bribes, including the "school jobs."

Second, Pinto testified that Ganim, in return for bribes and kickbacks, would bypass the proper selection procedures to award projects to the defendant. In particular, Pinto detailed how Ganim directed the contracts for the construction of a ballpark for a minor league baseball team and an indoor hockey arena to the defendant outside of the normal bidding and selection process. Yet, no evidence was presented to the arbitrator demonstrating that the proper selection process had not been followed for the West Side School contract. Indeed, it appears that the proper selection process was followed. John Marsilio, the plaintiff's director of facilities, described, in his testimony during the arbitration, the proper selection procedure for a design profes-

Ganim directed the school building committee (committee) to select the defendant for the West Side School contract. Accordingly, someone either on or affiliated with the committee had to have knowledge of Ganim's involvement in the decision to select the defendant. Yet, the plaintiff, despite opportunities to do so, never attempted to elicit any testimony from members of the committee about Ganim's involvement in the award of this contract. In particular, the plaintiff examined John Marsilio, who was a member of the committee and who sent the letter to the defendant requesting that it make a presentation for the West Side School project, but failed to ask if Ganim was involved in any way with the selection of the defendant for this project. The plaintiff also examined Ronald Pacacha, an associate attorney for the plaintiff municipality, regarding the bidding process for the West Side School contract, but did not inquire if Ganim was involved in awarding the contract to the defendant. Finally, the record reveals that besides Marsilio there were at least six other members of the committee, as it originally was comprised, and that only one of the six members would have been unavailable to testify during the arbitration. Therefore, I conclude that the circumstances surrounding the arbitrator's decision to exclude Pinto's testimony are not nearly as compelling as the circumstances that existed in *Tempo Shain Corp.* and *Hoteles Condado Beach*, in which the parties challenging the arbitrators' awards were deprived of producing their only evidence on the disputed claims.

sional firm as including advertisement, review of submittals from firms, and selection. Further, he testified that as part of the selection process a "short list" of firms may be asked to make presentations. There was undisputed testimony that, in the selection of the design professional for the West Side School, the plaintiff advertised for bids, the defendant submitted a proposal and its qualifications, the plaintiff placed the defendant on a short list to present its proposal, the defendant presented its proposal, and subsequently the school building committee (committee) selected the defendant for the project.

Third, the majority suggests that Pinto may have been motivated not to testify during the arbitration in order not to jeopardize his plea bargain deal. See footnote 11 of the majority opinion. Pinto may also have been similarly motivated to be a strong witness for the government in order to not risk his plea deal. This motivation could have led the arbitrator reasonably to discount some of Pinto's sweeping statements that "there was not a contract that we wanted or actively sought that we did not get," and that he got "any job contract or outcome that I needed to get and I was successful in all of them."

Fourth, despite Pinto's testimony that he illegally obtained "some school jobs," the United States Attorney did not pursue additional criminal charges against Ganim or Pinto with regard to any school contracts. Although prosecution of such criminal charges would have required a higher burden of proof than in a civil proceeding, the failure to pursue additional criminal charges for any school contracts undercuts Pinto's claim to have obtained them through bribery. Thus, the arbitrator also reasonably could have discounted Pinto's testimony that he illegally obtained "some school jobs" as the result of either an imprecise memory

or Pinto's desire to embellish the scope of the bribery scheme to increase his value as a government witness.

Fifth, Pinto's broad statements that he got every contract he wanted do not necessarily mean that the defendant obtained all of its contracts through bribery. For example, Patrick M. Rose, the senior vice president of the defendant, testified during the arbitration that he "has a contract in hand . . . for the [plaintiff]." This contract was not mentioned in Pinto's testimony or implicated in Pinto's information or Ganim's criminal indictment. In addition, Pinto admits in his testimony that when he went to work for the defendant, the plaintiff was already the defendant's largest client. Thus, Pinto's testimony would not necessarily establish that the defendant could have been selected for a municipal contract only through bribery, as opposed to on the merits of its bid.

Sixth, even if the arbitrator fully credited Pinto's admission that he obtained "some school contracts" illegally, the arbitrator was not required to conclude that the West Side School contract was among them. The majority acknowledges that Patrick Rose testified during the arbitration hearing that, in addition to the West Side School, the defendant worked on two other schools in Bridgeport, as well as a regional vocational agricultural school. See footnote 10 of the majority opinion. Thus, it was not a certainty, particularly in light of the complete absence of evidence of Ganim's involvement in the selection of the defendant for the West Side School contract, that the arbitrator would have concluded that the West Side School contract was procured illegally.

I therefore conclude that, even if Pinto's testimony had been admitted into evidence, the arbitrator nevertheless could have concluded that the defendant failed to meet its burden of proving its defense that the con-

tract was illegally procured. The defendant therefore was not substantially prejudiced by the exclusion of that testimony.

I also disagree with the majority's conclusion that the arbitrator's exclusion of Pinto's testimony does not find support in the rules under which the arbitration was conducted. Arbitration is a creature of contract and in that contract the parties can agree to the rules under which an arbitrator will decide the dispute. See *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 248 Conn. 108, 121, 728 A.2d 1063 (1999). The majority observed that the parties' submission to arbitration included a provision under which the parties agreed to arbitrate the dispute in accordance with the construction industry arbitration rules of the American Arbitration Association (arbitration rules). See footnote 12 of the majority opinion. Under the arbitration rules, if evidence is submitted after the conclusion of the hearing, "[a]ll parties *shall* be afforded an opportunity to examine and respond to such documents or other evidence."[2] (Emphasis added.) American Arbitration Association, Construction Industry Dispute Resolution Procedures (1999 Ed.) rule R-32, pp. 28–29. Thus, if the arbitrator had admitted Pinto's testimony, he would have been required to allow the defendant, after twelve days of hearings spanning nearly nineteen months, additional time to examine and respond to this new evidence. In addition, the arbitration rules provide the arbitrator with the discretion to "reject evidence deemed . . . to be . . . of slight value compared to

---

[2] Failure to abide by rule R-32 of the arbitration rules would have exposed any subsequent award to the risk of being vacated on these very same grounds. See *Manitowoc* v. *Manitowoc Police Dept.*, 70 Wis. 2d 1006, 1014–15, 236 N.W.2d 231 (1975) (upholding arbitrator's decision not to consider evidence submitted with party's posthearing brief because proffering party did not seek to reopen proceedings to consider new evidence and "[f]airness in arbitration certainly demands that each party have notice and an opportunity to review the statutorily relevant evidence").

the time and expense involved." Id., rule R-31. Accordingly, I conclude that the arbitrator reasonably may have determined that, based on the timing of the plaintiff's motion, the limited value of Pinto's testimony in light of the other evidence adduced during the arbitration, and the fact that the arbitration proceeding had been initiated nearly two years earlier,[3] admitting Pinto's testimony simply was not worth the risk of additional delay in concluding the proceedings. See *Alexander Julian, Inc.* v. *Mimco, Inc.*, 29 Fed. Appx. 700, 703 (2d Cir. 2002) (concluding that arbitrator did not commit misconduct in denying adjournment because opposing party may have been prejudiced by delay in concluding proceedings); *Riddle* v. *Wachovia Securities, LLC*, United States District Court for the District of Nebraska, Docket No. 8:05CV87 (December 12, 2005) (determining that arbitrator did not commit misconduct in refusing to grant party's motion for continuance when arbitrator possibly could have concluded that opposing party would have been unfairly prejudiced because arbitration already pending for one year).

The majority expresses doubt about the extent of any delay that admitting Pinto's testimony would have caused in bringing the arbitration proceedings to a conclusion. Specifically, in footnote 13 of its opinion, the majority "question[s] . . . in light of Pinto's refusal to testify in the first instance, the extent, if at all, to which he would have responded to that evidence." If the majority is suggesting that the defendant would not have responded if Pinto's testimony was admitted into evidence, I disagree. First, Pinto would have played no role in the defendant's decision to respond to Pinto's testimony because, by the time of the arbitration, Pinto

---

[3] The submission to arbitration was dated March 23, 2001, and the plaintiff's motion to admit Pinto's testimony to the arbitrator was dated March 10, 2003.

was no longer a shareholder of the defendant. Thus, Pinto's potential criminal liability likely would not have been a concern to the defendant in its decision to respond to his testimony. Second, the parties zealously contested this dispute throughout the arbitration proceedings as evidenced by the fact that it lasted nearly nineteen months and generated more than 2100 transcript pages and more than 100 exhibits. Third, the defendant was pursuing a claim for substantial damages that resulted in an award of $155,507.36. These factors lead to the conclusion that the defendant would have continued to pursue this claim as vigorously as it had throughout the prior proceedings.

Alternatively, if the majority is suggesting in the previously set forth quoted statement that the delay would have been minimal because Pinto likely would have refused to testify for the defendant in its response to the submission of his testimony from the Ganim trial, I also disagree. I believe that admitting Pinto's testimony would have delayed further the conclusion of the arbitration proceedings even if Pinto had again refused to testify because the arbitrator would have been required to, at the very least, give the defendant time to review the entire transcript of Pinto's testimony and any other relevant evidence from the Ganim trial, and to submit pertinent excerpts to the arbitrator. Further, the defendant may also have decided to call witnesses or adduce other evidence to attack Pinto's credibility and undermine the allegations he made in his testimony.

II

Because I conclude that the arbitrator did not commit misconduct, I reach the plaintiff's alternate grounds to affirm the judgment of the trial court. Specifically, the plaintiff argues that the arbitrator's award should be vacated because its enforcement would violate two public policies. First, the plaintiff claims that enforcement

of the award would violate the public policy against binding a municipality to an agreement entered into by its unauthorized agent. Second, the plaintiff argues that enforcement of the award would violate the public policy against enforcing a contract that was illegally procured. I conclude that both of the plaintiff's alternate grounds for affirmance lack merit.

This court will vacate an arbitrator's award if the award violates a clear public policy. *Garrity* v. *McCaskey*, 223 Conn. 1, 6, 612 A.2d 742 (1992). In deciding whether to vacate the arbitrator's award on this ground, a court "is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award. . . . Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [a contract] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. . . . The party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated. . . . Therefore, given the narrow scope of the public policy limitation on arbitral authority, the plaintiff can prevail in the present case only if it demonstrates that the [arbitrator's] award clearly violates an established public policy mandate." (Internal quotation marks omitted.) *State* v. *AFSCME, Council 4, Local 387, AFL-CIO*, 252 Conn. 467, 474–75, 747 A.2d 480 (2000).

On the basis of the foregoing, this court's analysis proceeds in two steps: First, it must be determined "whether an explicit, well-defined and dominant public policy can be identified. . . . If so, [we] then [decide] if the award violated the public policy." (Citation omitted; internal quotation marks omitted.) *MedValUSA Health*

*Programs, Inc.* v. *MemberWorks, Inc.*, 273 Conn. 634, 656, 872 A.2d 423, cert. denied sub nom. *Vertrue, Inc.* v. *MedValUSA Health Programs, Inc.*, 546 U.S. 960, 126 S. Ct. 479, 163 L. Ed. 2d 363 (2005); *State* v. *AFSCME, Council 4, Local 387, AFL-CIO,* supra, 252 Conn. 476. It should be noted, however, that this court has "been wary about vacating arbitral awards on public policy grounds because implicit in the stringent and narrow confines of this exception to the rule of deference to arbitrators' determinations, is the notion that the exception must not be interpreted so broadly as to swallow the rule." (Internal quotation marks omitted.) *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.,* supra, 657.

A

Turning to the plaintiff's first alternate ground for affirmance, I conclude that it lacks merit because, even if I were to assume, arguendo, that this state has an explicit, well-defined, and dominant public policy against enforcing contracts entered into by a municipality's agent who lacked the authority to bind the municipality, the plaintiff's claim seeks to disturb the arbitrator's factual findings in violation of this court's traditional deference to the arbitrator's factual findings. Although this court reviews de novo whether an arbitrator's award is clearly violative of public policy; *State* v. *AFSCME, Council 4, Local 387, AFL-CIO,* supra, 252 Conn. 475–76; *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.,* 252 Conn. 416, 429, 747 A.2d 1017 (2000); we still "adhere to the long-standing principle that findings of fact are ordinarily left undisturbed upon judicial review." *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.,* supra, 432; see also *State* v. *AFSCME, AFL-CIO, Council 4, Local 2663,* 257 Conn. 80, 95, 777 A.2d 169 (2001) (court deferred to arbitrator's factual findings in review of whether award violated public policy). The arbitrator, in the present case, did

not set forth explicitly his findings of fact and was not required to do so. *Almeida* v. *Liberty Mutual Ins. Co.*, 234 Conn. 817, 825, 663 A.2d 382 (1995). The arbitrator did, however, specify that he was awarding the defendant "contract damages," which indicates that he found, as a factual matter, a breach of either an express or implied in fact contract.[4] Accordingly, the arbitrator, as a predicate to finding a breach of contract, had to have found that the committee had either express or apparent authority to enter into the West Side School contract. See *Fennell* v. *Hartford*, 238 Conn. 809, 813, 681 A.2d 934 (1996) (no agent of common council "has power to bind the municipal corporation by contract, unless duly empowered by . . . authority conferred by the common council" [internal quotation marks omitted]); 10 E. McQuillin, Municipal Corporations (3d Ed. Rev. 1999) § 29.17, p. 321 (municipality is not bound by contract entered into by its agent "unless it manifestly appears that the agent is acting within the scope of his or her authority, or he or she is held out as having authority to do the act"). Thus, the arbitrator necessarily found that the committee had either the implied or apparent authority to bind the municipality. See *Giametti* v. *Inspections, Inc.*, 76 Conn. App. 352, 364, 824 A.2d 1 (2003) (despite lack of express finding of fact, implying from trial court's finding for plaintiff on merits of negligent misrepresentation claim that trial court found that plaintiff relied on misrepresentation because reliance is element of negligent misrepresentation).

"Whether a particular act . . . was authorized by the city, by any previous delegation of power . . . is a question of fact . . . ." (Internal quotation marks omit-

---

[4] Indeed, in an earlier part of its brief to this court, the plaintiff argues that the arbitrator's use of the phrase "contract damages" in the award indicates that he found there to be an operative contract between the parties.

ted.) *Oklahoma City* v. *Tuttle*, 471 U.S. 808, 836–37 n.8, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985); see also *Updike, Kelly & Spellacy, P.C.* v. *Beckett*, 269 Conn. 613, 636, 850 A.2d 145 (2004) ("nature and extent of an agent's authority is a question of fact for the trier where the evidence is conflicting or where there are several reasonable inferences which can be drawn" [internal quotation marks omitted]); *Fireman's Fund Indemnity Co.* v. *Longshore Beach & Country Club, Inc.*, 127 Conn. 493, 498, 18 A.2d 347 (1941) (implied authority is ordinarily question of fact). In addition, "[t]he issue of apparent authority is one of fact, requiring the trier of fact to evaluate the conduct of the parties in light of all of the surrounding circumstances." *Lettieri* v. *American Savings Bank*, 182 Conn. 1, 9, 437 A.2d 822 (1980). In the present case, the question of whether the committee had implied or apparent authority to bind the municipality is a finding of fact with regard to which I would defer to the arbitrator. Declining to review the factual findings of an arbitrator is consistent with our admonition to construe narrowly the public policy grounds for vacating arbitration awards lest this exception swallow this court's rule of deference to arbitrators' determinations. *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, supra, 273 Conn. 657. If this court were to engage in a review of the arbitrator's factual findings each time a dissatisfied party to an arbitration could make a colorable claim that the award implicates an explicit, well-defined, and dominant precedent of our case law, then an arbitrator's award would likely mark the beginning of litigation and not the resolution of the parties' dispute. Such a review would be inconsistent with the well settled principle that: "[B]ecause we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an effi-

cient and economical system of alternative dispute resolution." (Internal quotation marks omitted.) *United States Fidelity & Guaranty Co.* v. *Hutchinson*, 244 Conn. 513, 519, 710 A.2d 1343 (1998). I therefore conclude that the award did not violate public policy because the arbitrator implicitly found that the committee, as an agent of the plaintiff, had authority to enter into the contract.

B

Turning to the plaintiff's second alternate ground for affirmance, I conclude that this claim also lacks merit because, even if I again were to assume, arguendo, that there exists an explicit, well-defined, and dominant public policy against enforcing illegally procured contracts, I would defer to the arbitrator's factual findings under this court's standard of review of the narrow public policy exception. See part II A of this opinion. Thus, I would not review the correctness of the finding, implicit in the arbitrator's award, that the contract was not illegally procured. See *Connecticut Importing Co.* v. *Janowitz*, 128 Conn. 433, 436, 23 A.2d 514 (1941) (whether circumstances surrounding contract show that it was induced illegally is question of fact). The plaintiff contended throughout the arbitration that the West Side School contract was illegally procured. The arbitrator's award in favor of the defendant reveals his clear rejection of this defense. Even if I were to consider the evidence excluded by the arbitrator, I would nevertheless conclude that this evidence was insufficient to prove clearly that the West Side School contract was obtained illegally. See part I of this opinion. I therefore conclude that the plaintiff's second alternate ground also lacks merit.

I therefore respectfully dissent.