## MICHAEL MCCANN v. DEPARTMENT OF ENVIRONMENTAL PROTECTION ET AL.
### (SC 18102)

Rogers, C. J., and Norcott, Katz, Palmer and Schaller, Js.

Argued April 14—officially released August 5, 2008

*Thadd A. Gnocchi,* assistant attorney general, with whom were *William J. McCullough,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, for the appellants (defendants).

*Michael S. Hillis*, with whom, on the brief, was *Jennifer Podolak*, for the appellee (plaintiff).

*Opinion*

ROGERS, C. J. The defendants, the department of environmental protection (department) and Gina McCarthy, the commissioner of environmental protection (commissioner), appeal[1] from the judgment of the trial court vacating an arbitration award in their favor. After the department terminated the plaintiff, Michael McCann, from his employment as an emergency response coordinator, the plaintiff filed a grievance and ultimately submitted the matter to arbitration pursuant to the terms of a collective bargaining agreement. The arbitrator rendered an award in favor of the defendants, concluding that the plaintiff's termination had been for just cause and did not violate the collective bargaining agreement or state law. The plaintiff then filed an application to vacate the award pursuant to General Statutes § 52-418,[2] which the trial court granted. The defendants claim on appeal that the trial court improperly determined that the arbitrator had: (1) failed to consider all relevant evidence in violation of § 52-418 (a) (3); (2)

---

[1] The defendants appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 52-418 (a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

misconstrued the evidence and made factual errors; and (3) "exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." General Statutes § 52-418 (a) (4). We reverse the judgment of the trial court.

The following facts found by the arbitrator and procedural history are relevant to our resolution of this appeal.[3] The plaintiff started working for the department in November, 1985. During the mid-1990s, he received from the department a desktop computer, which he used in his office, and a laptop computer, which he used in the field. On May 1, 1998, the department sent out a directive to all department e-mail recipients stating in bold, capital letters: "ELECTRONIC EQUIPMENT IS FOR STATE WORK PURPOSES ONLY." The directive also stated that "[a]ll employees are expected to become familiar with and abide by these policies. Employees who violate any provision of the [department's] Information Technology Policies will be subject to disciplinary action by the [department] and/or the [s]tate of Connecticut." Attached to the directive was an acceptable use policy describing the authorized use of state computer and e-mail resources and stating that persons who violated the policy would be subject to disciplinary action.[4] The directive also pro-

---

[3] We have verified the names of individuals referenced throughout this opinion to the extent possible, but rely, otherwise, on uncontested facts in the arbitrator's decision.

[4] The acceptable use policy stated: "All computer resources, including devices, programs and data, electronic or hard copy, owned or leased by the [s]tate of Connecticut, and facilities of the [s]tate of Connecticut, which include but are not limited to the [department], shall only be used solely for legitimate and authorized business purposes.

"Any unauthorized use or unauthorized inquiries into computer systems or files, or unauthorized access to resources and/or facilities is prohibited and violators will be subject to disciplinary and/or legal action by the [d]epartment and/or [s]tate of Connecticut."

With respect to e-mail, the acceptable use policy stated: "All communications within the [d]epartment for which internal ([d]epartment) e-mail or external (Internet) e-mail is used shall be solely for state business. The

vided that department employees were to "use only state authorized software on state owned hardware. The use of unlicensed software, personally owned software, unauthorized bulletin board or shareware software is forbidden" and "personal software may not be installed on any computer owned by the state (or [f]ederal [g]overnment)."

On May 7, 2001, William Hegener, then the director of the oil and chemical spill response division of the bureau of waste management, of which the plaintiff was a member, sent a memo to the division's staff stating: "As a result of the [fiscal year] 1998 report from the Auditors of Public Accounts which has recently received media attention, the [c]ommissioner has communicated . . . [that] there will be a 'zero tolerance' for misuse of [s]tate issued equipment. The [c]ommissioner has stated in no uncertain terms that any employee who misuses equipment such as desk phones, cellular phones, computers and Internet access will be held accountable for their actions and could result in a suspension or dismissal. All [s]tate equipment should be used to perform your job duties only." On April 3, 2002, another notice prohibiting the use of state owned computer equipment for personal purposes was distributed, via e-mail, to all department employees.[5]

[d]epartment provides an electronic mail system to assist staff in the performance of their job and [the electronic mail system] shall be used only for that purpose."

[5] The notice provided in relevant part: "These policies have been in existence since at least 1999. As a condition of Internet access, each employee must sign a statement acknowledging that [he or she has] read the policy and will abide by its terms. Kindly print out copies of the policies and post or publish them as you would any other policy impacting state employees.

"Generally, under the terms of the policies, employees may only use the Internet and e-mail in connection with their state employment. Employees cannot send or receive personal e-mails nor can they search the Internet for their own personal reasons. This includes such things [as] messages to family, friends, unions, soccer teams, [eBay] auctions, [L.L. Bean, Inc.] purchases, Napster, etc. Obviously employees cannot control unsolicited e-mail communications, however, they should not give their state e-mail addresses to others for the purpose of receiving mail. . . ."

In addition to these notices, all department desktop computers displayed a message that required users to accept the department's computer use policy each time they logged in. The plaintiff used the department's desktop computers on a regular basis.

In 2002, the plaintiff brought his state issued laptop computer to the department's information technology staff for repair because it was malfunctioning. While attempting to repair the computer, the information technology staff discovered that the plaintiff had downloaded a Kmart Internet service provider and games onto it. John Traynor, a member of the information technology staff, sent an interoffice memorandum to the department's director and to the bureau chief notifying them that unauthorized software had been installed in the computer. Traynor requested and received permission to remove the software, repaired the computer, and returned it to the plaintiff. After the computer had been returned to the plaintiff, Mark DeCaprio, the division director, told the plaintiff to get his own computer for personal use. Nevertheless, the plaintiff continued to use his state issued laptop computer for personal reasons.

The department subsequently upgraded its computer equipment and issued a second laptop computer to the plaintiff. The computer had been provided with an asset identification sticker and a serial number. In 2004, the plaintiff experienced problems with the second laptop computer and brought it to the information technology staff for repair. At that time, the department provided the plaintiff with a third laptop computer to use while the malfunctioning computer was being repaired. The malfunctioning computer no longer had an asset identi-

The plaintiff testified that he did not receive this e-mail because his name was not on the e-mail list. Joanne Driver, the principal personnel officer for the department at that time, testified that the message was sent to all department employees, even those whose names did not appear on the list.

fication sticker or serial number, and the staff was unable to identify it as belonging to the department. When Traynor activated the computer, he discovered "errors and missing files." It appeared to him that someone had attempted to remove files from the computer. Traynor then requested and received permission from the department's deputy commissioner to investigate whether the computer had been tampered with or used for personal purposes. During the investigation, Traynor discovered that a Wal-Mart Internet service provider had been installed on the computer. While Traynor was working on the computer, the information technology staff notified him that the computer appeared to have a "virus" that could contaminate the state's computer network. To avoid potential contamination, Traynor disconnected the computer from the state network and set up a separate network to continue his investigation into the use of the computer. He discovered that the computer had been used to access numerous stores and shopping websites as well as two websites where hallucinogenic mushrooms were sold. Traynor identified over 7000 "entries" on the computer, the vast majority of which were not work-related. Traynor notified bureau chief Michael Harder of the results of his investigation.

At about 7 a.m. on May 25, 2004, the plaintiff's supervisor, Ben Yorke, and a department regional manager, Richard Ciasullo, visited the plaintiff at his residence and gave him a letter from the department stating that he was being placed on administrative leave pending conclusion of the investigation into the misuse of the malfunctioning laptop computer. The letter directed the plaintiff to attend a meeting on May 27, 2004, concerning the matter. Yorke and Ciasullo asked the plaintiff to give them the laptop computer that he currently was using, but the plaintiff was unable to locate it. After York and Ciasullo left, the plaintiff found the computer

and deleted a number of files from it. He also used the computer to access several websites. He returned the computer to the department at the May 27 meeting. Thereafter, Traynor discovered that the plaintiff again had downloaded an unauthorized Internet service provider onto the laptop and had accessed numerous websites for personal purposes, including at least one pornography website.

On June 30, 2004, Joanne Driver, the department's principal personnel officer, sent the plaintiff a letter notifying him that the department was considering terminating his employment and directing him to attend a predisciplinary meeting on July 8, 2004. On July 8, 2004, the department terminated the plaintiff's employment. The termination letter stated that "[i]t was determined that [the plaintiff] violated [d]epartment and [s]tate policies and directives by using state computers for personal use. [The plaintiff's] conduct has been determined to be detrimental to the best interest of the [d]epartment . . . and the [s]tate of Connecticut." The next day, the plaintiff's union, Connecticut State Employees Association, SEIU Local 2001 (union)[6] filed a grievance challenging the termination pursuant to the procedures provided in the collective bargaining agreement. Thereafter, the parties entered a stipulation to arbitrate the following issues: "Was the dismissal of [the plaintiff] for just cause? If not, what shall be the remedy consistent with the contract? Was the dismissal of [the plaintiff] violative of the collective bargaining agreement and [s]tate of Connecticut statutes and regulations?"

During the arbitration hearings, the plaintiff testified that he never had been told that he could not use the

---

[6] The arbitrator's decision indicates that although the union filed the grievance, the plaintiff waived his right to union representation shortly thereafter and was represented by private counsel.

computer for personal reasons. He also testified that he had observed other department employees using their computers for personal matters while in the office, including accessing the Internet. The plaintiff further testified that he never had been disciplined for loading unauthorized software onto the laptops or counseled not to do so and had not been given an opportunity to correct his behavior. The plaintiff then pointed out that other department employees who had been accused of misusing state equipment had received multiple warnings and second chances, and sought to introduce as evidence a number of stipulated agreements between the department and these employees showing that they had not been terminated. The arbitrator rejected the evidence, however, on the ground that the agreements expressly provided that they were not to be used as precedent in other cases.

In his decision, the arbitrator found that the plaintiff repeatedly had been informed that the misuse of state owned computers was "a grave offense that might lead to discharge." He also found that, after the plaintiff's misuse of the first laptop computer was discovered, DeCaprio had instructed him to get his own computer. The arbitrator concluded that the department was "entitled to insist that employees obey clear directives to respect [s]tate working time and [s]tate property." Accordingly, the arbitrator rendered an award in favor of the defendants, finding that the plaintiff's dismissal had been for just cause and did not violate the collective bargaining agreement or state statutes or regulations.

Thereafter, the plaintiff filed an application to vacate the arbitration award pursuant to § 52-418. The plaintiff alleged, inter alia, that the arbitrator had failed to consider whether the plaintiff's termination had been for just cause and for "the good of the service," had disregarded the "doctrine of progressive discipline," and had failed to receive evidence regarding the discipline of

other employees for misuse of state computers. The defendants subsequently filed an application to confirm the arbitration award.

In its corrected memorandum of decision, the trial court determined that the arbitrator had failed "to conduct a just cause analysis," but, instead, had assumed that the department had "blanket discretion over [the plaintiff's] termination."[7] The court further concluded that the arbitrator had failed "to recognize the clearly established right of the plaintiff to progressive discipline and an opportunity to correct his conduct." Finally, the court determined that the arbitrator had improperly ignored evidence that the department had not enforced its "zero tolerance" policy regarding the personal use of state computers and had made findings not supported by the evidence. Accordingly, the court concluded that the arbitrator had violated § 52-418 (a) (3) and (4) and vacated the award. This appeal followed.

I

We first address the defendants' claim that the trial court improperly determined that the arbitrator violated § 52-418 (a) (3) when he refused to receive relevant evidence. The following additional facts and procedural history are relevant to our resolution of this claim. As we have indicated, the plaintiff offered as evidence three stipulated agreements relating to the department's discipline of other employees who had misused state computers. One employee had been suspended for three days and two others had received written reprimands. Two of the stipulated agreements provided that

---

[7] In support of this determination, the trial court relied on the following language in the arbitrator's decision: "Terminating [the plaintiff] seems harsh. Nevertheless, the [s]tate is entitled to insist that employees obey clear directives to respect [s]tate working time and [s]tate property. Indeed, the parties' collective bargaining contract states that in so many words. Whether [the plaintiff] should have been disciplined by some measure short of [termination], however, was for the [s]tate, not the arbitrator, to decide."

they were "without precedent and cannot be used to justify similar action in any other case." The plaintiff contended that the documents were not being introduced for their precedential value, however, but only to establish that the department did not have a zero tolerance policy as to unauthorized use of computers. The arbitrator refused to accept the agreements as evidence on the grounds that the agreements did not explain the reasons for the disposition of the cases and using the agreements as precedent could discourage future settlements.[8] The arbitrator indicated, however, that, if the plaintiff had other evidence that the department did not have a zero tolerance policy regarding unauthorized computer use, he would be willing to accept it.

The trial court concluded that the arbitrator had deprived the plaintiff "of a full and fair hearing" by excluding this evidence, and, as a result, the plaintiff had "suffered substantial prejudice . . . ." Accordingly, the trial court concluded that the arbitrator had violated § 52-418 (a) (3).

As a preliminary matter, we set forth the standard of review. "Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the

---

[8] During the arbitration hearing, the arbitrator stated that "there are all kinds of reasons why an employer and a union might agree to settle a case. And the reasons are typically not articulated in the formal settlement agreement. For example, the grievant in a particular case might have many years seniority and an unblemished record or might have an underlying medical problem that explains his or her misconduct." The arbitrator also stated that using the agreements in this way "would seem to . . . violate the terms of the settlement agreement itself" and would create a "risk that the state [or the union] would never be willing to enter into a settlement agreement again because . . . it could not be settled with the assurance it would not be a precedent in the future."

parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . .

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact." (Internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 80, 881 A.2d 139 (2005).

"[A]rbitrators are accorded substantial discretion in determining the admissibility of evidence, particularly in the case of an unrestricted submission, which relieve[s] the arbitrators of the obligation to follow strict rules of law and evidence in reaching their decision. . . . Indeed, it is within the broad discretion of arbitrators to decide whether additional evidence is required or would merely prolong the proceedings unnecessarily. . . . This relaxation of strict evidentiary rules is both necessary and desirable because arbitration is an informal proceeding designed, in part, to avoid the complexities of litigation. Moreover, arbitrators generally are laypersons who bring to these proceedings their technical expertise and professional

skills, but who are not expected to have extensive knowledge of substantive law or the subtleties of evidentiary rules. . . .

"A trial court's decision to vacate an arbitrator's award under § 52-418 involves questions of law and, thus, we review them de novo. . . . [Section] 52-418 (a) (3) provides in relevant part that a trial court shall vacate an arbitrator's award if the arbitrators have been guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy . . . . In light of the well settled principles discussed previously, this court has stated that § 52-418 (a) (3) does not mandate that every failure or refusal to receive evidence, even relevant evidence, constitutes misconduct. . . . To establish that an evidentiary ruling, or lack thereof, rises to the level of misconduct prohibited by § 52-418 (a) (3) requires more than a showing that an arbitrator committed an error of law. . . . Rather, a party challenging an arbitration award on the ground that the arbitrator refused to receive material evidence must prove that, by virtue of an evidentiary ruling, he was in fact deprived of a full and fair hearing before the arbitration panel. . . . The federal courts, in construing the nearly identical grounds for vacating an arbitration award under 9 U.S.C. § 10 (a) (3), have held that an arbitration hearing is fair if the arbitrator gives each of the parties to the dispute an adequate opportunity to present its evidence and argument. . . . If the evidence at issue is merely cumulative or irrelevant, the arbitrator's refusal to consider it does not deprive the proffering party of a full and fair hearing." (Citations omitted; internal quotation marks omitted.) *Bridgeport* v. *Kasper Group, Inc.*, 278 Conn. 466, 474–76, 899 A.2d 523 (2006).

We conclude that the arbitrator's refusal to receive the stipulated agreements into evidence was within his broad authority and did not deprive the plaintiff of a

full and fair hearing. The arbitrator's explanation for rejecting the evidence was reasonable. We further note that the arbitrator was willing to consider other evidence that the department did not have a zero tolerance policy regarding unauthorized computer use. Finally, the evidence was of limited probative value because, even if the plaintiff had established that the department did not have a zero tolerance policy, the arbitrator reasonably could have found that the plaintiff's repeated and serious violations of the computer use policy justified his termination. Accordingly, we conclude that the trial court improperly determined that the arbitrator's refusal to accept the stipulated settlement agreements as evidence violated § 52-418 (a) (3).

## II

We next address the defendants' claim that the trial court improperly determined that the arbitrator misconstrued the evidence and made erroneous factual findings. The following facts and procedural history are relevant to our review of this claim. Traynor testified that, as he was attempting to repair the second malfunctioning laptop computer, he was advised by the state department of information technology that the computer had a virus that was attempting to invade the state's computer network, to which the laptop computer had been connected. The plaintiff objected to the testimony on the ground that it was hearsay. The arbitrator stated that it was his understanding that the testimony was not being offered for the truth of the matter asserted. The defendants explained that they were "not necessarily claiming that a virus was spread," but were introducing the testimony "to show how the [department] proceeded" after it had received the malfunctioning computer. At that point, the plaintiff withdrew his objection. Later in the arbitration proceeding, the plaintiff testified that he had been employed by the department for eighteen years when he was terminated.

In his decision, the arbitrator found that the plaintiff's "unauthorized use of his [s]tate laptop even caused it to be infected with a virus that threatened the [s]tate's entire computer network, no small matter." The arbitrator also stated that the plaintiff had been employed by the department for fifteen years. The trial court concluded that, in making these findings, the arbitrator had "misconstrued the evidence and treated his own misinterpretation and opinions as fact." In addition, the court concluded, the arbitrator had "cited evidence which [never] was . . . presented in arbitration, thus denying [the plaintiff] a chance to respond."

We agree with the trial court that the arbitrator's findings that the plaintiff's misuse of the second laptop computer had "threatened the [s]tate's entire computer network," and that the plaintiff had been employed by the department for fifteen years, were not supported by properly admitted evidence to which the plaintiff had had an opportunity to respond. We must also conclude, however, that these factual errors do not constitute grounds for vacating the arbitrator's decision. See *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 80 ("Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence . . . ." [Internal quotation marks omitted.]); id. (courts do not review arbitrator's decision for factual errors).[9] In any event, there is no reasonable

---

[9] We recognize that, if an error of fact results from the arbitrator's misconduct or his refusal to hear pertinent evidence in violation of § 52-418 (a) (3), or if the error is so egregious that it deprives a party of a full and fair hearing; see *Bridgeport* v. *Kasper Group, Inc.*, supra, 278 Conn. 474–76; or results in a patently irrational application of the law; see *Darien Education Assn.* v. *Board of Education*, 172 Conn. 434, 437–38, 374 A.2d 1081 (1977); then it may warrant vacating the arbitration award. The arbitrator's factual mistakes in the present case did not rise to that level.

probability that the arbitrator's decision would have been different if not for these factual errors. The primary basis for the decision was the plaintiff's repeated and serious misuse of the computers. We conclude, therefore, that the trial court improperly concluded that these errors by the arbitrator deprived the plaintiff of a full and fair hearing and violated § 52-418 (a) (3).

### III

We next consider the defendants' claim that the trial court improperly determined that the arbitrator "exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made," in violation of § 52-418 (a) (4). Specifically, the defendants claim that the trial court improperly concluded that the arbitrator had failed to consider whether the department had just cause to terminate the plaintiff under the collective bargaining agreement.

The following additional facts and procedural history are relevant to our resolution of this claim. Article fifteen, section 4 (C), of the collective bargaining agreement at issue in this case provides in relevant part: "(a) An appointing authority may dismiss an employee with permanent status from the classified service when the good of the service will be served thereby. Just cause for considering the good of the service shall be based on, but not necessarily restricted to, incompetency, inefficiency, neglect of duty, or misconduct.

"(b) The following may be considered causes for the dismissal of any employee. This listing is not to be construed as all-inclusive. . . .

"(7) . . . [Wilful] . . . misuse of any [s]tate . . . property [or] equipment . . .

"(8) Deliberate violation of any . . . agency rule . . .

"(13) Engaging in any activity which is detrimental to the best interests of the agency or of the [s]tate. . . ." See also General Statutes § 5-240 (c); Regs., Conn. State Agencies §§ 5-240-5a (a) and 5-240-1a (c).

Article fifteen, § 2, of the collective bargaining agreement provides in relevant part that "[a]ny disciplinary action must be preceded by adequate warning and opportunity for corrective action except in cases of serious misconduct. . . ." Section 4 of article fifteen provides in relevant part that no disciplinary action "shall be imposed unless the corrective disciplinary step [has] been imposed . . . ."

The arbitrator quoted the "good cause" portion of the collective bargaining agreement in his decision and ultimately concluded that the plaintiff's dismissal was for just cause. In support of this conclusion, the arbitrator found that the department had made it "inescapably clear that using [s]tate-issued computers and Internet access for personal purposes was a serious offense that might subject offending employees to discharge," and that the plaintiff had been personally aware of that policy. He further found that the plaintiff had ignored his supervisor's advice to get his own computer after his first laptop computer malfunctioned but, instead, "continued to flout the rules." In addition, the arbitrator found that the plaintiff's "misuse was not just occasional or casual: It was regular and repeated on thousands of occasions."

The trial court concluded that the arbitrator had failed to conduct an independent just cause analysis, but, instead, improperly had deferred to the department's determination that there had been just cause to terminate the plaintiff. The trial court further concluded that the arbitrator had not considered the plaintiff's "clearly established right . . . to progressive discipline . . . ." Accordingly, the court concluded that the arbi-

trator had "so imperfectly executed [his powers] that a mutual, final and definite award upon the subject matter submitted was not made" in violation of § 52-418 (a) (4).

Our standard of review under § 52-418 (a) (4) is well established. In construing § 52-418 (a) (4), "we have, as a general matter, looked to a comparison of the award with the submission to determine whether the arbitrators have exceeded their powers. . . . We have also recognized, however, that an arbitrator's egregious misperformance of duty may warrant rejection of the resulting award. In *Darien Education Assn.* v. *Board of Education*, 172 Conn. 434, 437–38, 374 A.2d 1081 (1977), we noted that [i]f the memorandum of an arbitrator revealed that he had reached his decision by consulting a ouija board, surely it should not suffice that the award conformed to the submission. . . . Other states have also recognized that an arbitrator's egregious misperformance of duty or patently irrational application of legal principles warrants review and rejection of the resulting award. . . .

"[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. We emphasize, however, that the manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles. . . .

"In *Garrity* [v. *McCaskey*, 223 Conn. 1, 7–8, 612 A.2d 742 (1992)], we adopted the test enunciated by the United States Court of Appeals for the Second Circuit in interpreting the federal equivalent of § 52-418 (a) (4).

. . . The test consists of the following three elements, all of which must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable." (Citations omitted; internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 273 Conn. 86, 94–95, 868 A.2d 47 (2005).

We conclude that the arbitrator's findings reasonably support a conclusion that the plaintiff had misused the department's laptop computers and had violated the department's policy against using computers for personal purposes. In turn, these findings support a conclusion that the plaintiff had engaged in misconduct under article fifteen, § 4 (C), of the collective bargaining agreement by wilfully misusing state equipment and deliberately violating a department rule. Accordingly, we conclude that the arbitrator's conclusion that the plaintiff was terminated for just cause was not in manifest disregard of the law.[10]

We further conclude that, contrary to the trial court's determination, the arbitrator did not ignore any "clearly established right of the plaintiff to progressive disci-

---

[10] The plaintiff claims, and the trial court concluded, that the arbitrator did *not* make an independent determination that the department had terminated the plaintiff for just cause, but improperly deferred to the department's determination. See footnote 7 of this opinion. We do not agree with this reading of the arbitrator's decision. The arbitrator merely suggested that, *although termination was justified under the collective bargaining agreement,* termination seemed harsh to him. His judgment that he personally might have imposed a less severe form of discipline did nothing to undermine his conclusion that just cause existed.

pline and an opportunity to correct his conduct." As the plaintiff conceded at oral argument before this court, the collective bargaining agreement does not confer any express right to "progressive discipline . . . ." Rather, the agreement provides for "adequate warning and opportunity for corrective action . . . ." Although the arbitrator did not specifically quote this portion of the agreement in his decision, he implicitly concluded that the plaintiff had been warned and had been given an opportunity to correct his conduct when he stated that the plaintiff repeatedly had received notice of the department's policy on computer use and personally had been admonished to get his own computer. Although reasonable minds might disagree as to whether general notifications of department policy and an admonition that is not expressly characterized as a disciplinary step constitute "warning and opportunity for corrective action" under article fifteen of the collective bargaining agreement, the arbitrator's implicit conclusion that the department had complied with the requirements was not obviously and egregiously wrong and, accordingly, the award was not subject to being vacated under *Garrity* v. *McCaskey*, supra, 223 Conn. 7–8. We conclude, therefore, that the trial court improperly determined that "the [arbitrator has] exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."[11] General Statutes § 52-418 (a) (4).

---

[11] In support of his claim to the contrary, the plaintiff cites *State* v. *New England Health Care Employees Union*, 271 Conn. 127, 133–42, 855 A.2d 964 (2004) (single instance of inadvertent abuse of client of department of mental retardation did not constitute per se grounds for termination and arbitrator's reinstatement of employee did not violate public policy against such abuse), and *Brantley* v. *New Haven*, 100 Conn. App. 853, 859–63, 920 A.2d 331 (2007) (single instance of unintentional violation of public policy against unauthorized access to computer system did not require termination of employee and arbitration board's reinstatement of employee was proper). The plaintiff's reliance on these cases is misplaced. In each case, the court merely held that the employee's conduct was not so egregious that it *required* termination as a matter of public policy and upheld the arbitrator's decision

The judgment is reversed and the case is remanded to the trial court with direction to deny the plaintiff's application to vacate the arbitration award.

In this opinion the other justices concurred.

that reinstatement was warranted. The cases do not stand for the proposition that an award upholding a termination must be vacated under all similar circumstances. In any event, unlike the present case, both cases involved *single* instances of *unintentional* misconduct. *State* v. *New England Health Care Employees Union,* supra, 138; *Brantley* v. *New Haven,* supra, 859, 861–62.