******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

CHERYL A. JENKINS *v.* MICHAEL A. JENKINS
(AC 39231)

Keller, Bright and Pellegrino, Js.

*Syllabus*

The plaintiff appealed to this court from the judgment of the trial court
dissolving her marriage to the defendant and denying her motions to
vacate an arbitration award related to the dissolution matter. During
the dissolution proceedings, the parties had agreed to enter into arbitra-
tion for the resolution of various issues and further agreed that they
would not have the arbitration proceedings recorded. During arbitration,
the arbitrator precluded the testimony of the plaintiff's psychiatrist
because the plaintiff failed to introduce a letter, on which the psychiatrist
partially based his evaluation of the plaintiff's claims of abuse by the
defendant, as an exhibit prior to the proceedings. Thereafter, the trial
court accepted the arbitrator's award and rationale, and rendered judg-
ment dissolving the marriage. On appeal, the plaintiff claimed, inter alia,
that the arbitrator improperly precluded the testimony of her psychiatrist
in violation of statute (§ 52-418 [a] [3]). *Held:*

1. The trial court did not err in denying the plaintiff's motion to vacate the
arbitration award on the basis of the arbitrator's refusal to hear the
testimony of the plaintiff's psychiatrist: that court properly concluded
that the plaintiff failed to meet her burden to show that she was deprived
of a full and fair hearing, as the arbitration agreement provided that the
arbitrator controlled the admission of evidence and in the absence of
any recordings of the arbitration proceedings, the trial court properly
considered the length of the proceedings and the arbitrator's rulings,
and determined that the plaintiff had a full and fair opportunity to
present her case, the arbitration award and rationale revealed that the
plaintiff testified at the proceedings regarding her claims of abuse, and
the arbitrator referenced the contents of the letter in the arbitration
rationale, which indicated that she considered it in structuring the award;
moreover, the plaintiff failed to demonstrate that the psychiatrist's testi-
mony would have impacted the outcome of the proceedings and how
such testimony would have persuaded the arbitrator that the defendant
was more at fault, as the testimony likely would have been duplicative
of the evidence already before the arbitrator, and, thus, it was unlikely
that the testimony would have negated evidence that indicated that the
plaintiff contributed to the breakdown of the marriage.

2. The plaintiff could not prevail on her claim that the arbitration award
should have been vacated because the arbitrator was biased against her
in violation of § 52-418 (a) (2), the trial court having properly concluded
that the plaintiff failed to meet her burden of demonstrating that the
arbitrator was partial; because there was no record of the arbitration
proceedings, the trial court relied on testimony at the hearing on the
motions to confirm and to vacate the arbitration award in determining
whether the arbitrator was biased in violation of § 52-418 (a) (2), and
the only evidence the plaintiff produced at that hearing in support of
her claim was her own testimony and that of her financial expert,
whose testimony only partially corroborated the plaintiff's account of
the arbitrator's statements and behavior toward the plaintiff.

Argued October 9—officially released December 18, 2018

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Stamford, where the court, *Colin, J.*, approved
the agreement of the parties to enter into binding arbi-
tration as to certain disputed matters; thereafter, the
arbitrator issued an award and entered certain orders;
subsequently, the defendant filed a motion to confirm
the arbitration award, and the plaintiff filed motions to

vacate the award; thereafter, the matter was tried to the court, *Colin, J.*; judgment granting the defendant's motion to confirm, denying the plaintiff's motions to vacate, and dissolving the parties' marriage and granting certain other relief, from which the plaintiff appealed to this court. *Affirmed.*

*Pamela M. Magnano*, with whom, on the brief, was *Cheryl A. Jenkins*, for the appellant (plaintiff).

*George J. Markley*, for the appellee (defendant).

*Opinion*

PELLEGRINO, J. The plaintiff, Cheryl A. Jenkins, appeals from the trial court's judgment denying her motion to vacate an arbitration award in a dissolution of marriage matter which, in addition to dissolving the marriage, included orders of alimony and a division of the parties' assets and other financial orders.[1] On appeal, the plaintiff claims that the trial court erred when it refused to vacate the arbitrator's award because the arbitrator (1) precluded the testimony of an expert witness in violation of General Statutes § 52-418 (a) (3), and (2) treated one party more favorably than the other in violation of General Statutes § 52-418 (a) (2). We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of this appeal. The plaintiff and the defendant, Michael A. Jenkins, were married on August 31, 2008. In December, 2013, the plaintiff commenced the present dissolution action.

In November, 2015, the parties entered into an arbitration agreement (agreement) for the resolution of several issues relating to the dissolution of their marriage. Arbitration proceedings took place before Elaine Gordon (arbitrator) on December 1, 2, and 21, 2015. The parties attended the proceedings with counsel and agreed that they would not have the proceedings recorded.[2]

On February 3, 2016, the arbitrator issued an award and rationale for the award. The plaintiff subsequently filed motions in the Superior Court to vacate the award.[3] After holding a full evidentiary hearing on the plaintiff's two operative motions on March 28, 2016, the trial court, *Colin*, *J.*, denied the plaintiff's motions to vacate the arbitration award. This appeal followed. Additional facts and procedural history will be set forth as necessary.

The plaintiff's claims arise under "General Statutes § 52-418 (a), which sets forth the standard of review governing an application to vacate, correct or modify an arbitration award, [and] provides in relevant part: Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds [that] . . . (2) . . . there has been evident partiality or corruption on the part of any arbitrator; [or] (3) if the arbitrators have been guilty of misconduct in refusing to . . . hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced . . . ." (Internal quotation marks omitted.) *Dept. of Transportation* v. *White Oak Corp.*, 319 Conn. 582, 598 n.3, 125 A.3d 988 (2015).

We begin by setting forth the relevant standard for reviewing a trial court's judgment affirming an arbitra-

tion award. "This court has for many years wholeheartedly endorsed arbitration as an effective alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation. . . . When arbitration is created by contract, we recognize that its autonomy can only be preserved by minimal judicial intervention. . . . Since the parties consent to arbitration, and have full control over the issues to be arbitrated, a court will make every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings. . . . The party challenging the award bears the burden of producing evidence sufficient to invalidate or avoid it . . . ." (Internal quotation marks omitted.) *Bridgeport* v. *Kasper Group, Inc.*, 278 Conn. 466, 473–74, 899 A.2d 523 (2006).

Although a trial court's review of an arbitrator's decision is limited, our review of a trial court's decision to dismiss a motion to vacate an arbitration award under § 52-418 (a) (3) involves a question of law and, thus, is plenary. See id., 476. We review a trial court's decision to dismiss a motion to vacate an arbitration pursuant to § 52-418 (a) (2), which involves factual findings by the trial court, under the clearly erroneous standard. See *Haynes Construction Co.* v. *Cascella & Son Construction, Inc.*, 36 Conn. App. 29, 32–33, 647 A.2d 1015, cert. denied, 231 Conn. 916, 648 A.2d 152 (1994) (applying clearly erroneous standard when reviewing trial court's decision vacating arbitration decision on basis of arbitrator's evident partiality). "Determining whether a trial court's decision is clearly erroneous involves a two part function: where the legal conclusions of the court are challenged we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous." (Internal quotation marks omitted.) Id., 32.

I

The plaintiff first claims that the trial court erred in denying her motion to vacate the arbitration award on the basis of the arbitrator's refusal, in violation of § 52-418 (a) (3), to allow testimony from Carl Mueller, a psychiatrist called by the plaintiff to establish that she was physically and sexually abused by the defendant. Specifically, the plaintiff claims that the trial court erred in denying her motion because, by precluding Mueller from testifying, the arbitrator "prejudiced the plaintiff's ability to prove that the defendant . . . abused her and was primarily at fault for the breakdown of the marriage." We disagree.

The following additional facts and procedural history are relevant to the resolution of this claim. Prior to the arbitration proceedings, the plaintiff disclosed Mueller as a potential expert witness. When the defendant deposed Mueller on July 2, 2015, Mueller testified that he had reviewed a letter that the defendant sent to the plaintiff requesting that she set up and record sexual encounters with other individuals, and that the letter was part of the basis of his expert opinion. Although Mueller was asked, in advance of the deposition, to bring "documents [he] obtained, created, reviewed or relied upon in connection with [the] matter," Mueller failed to produce the letter at the deposition because the original was in the plaintiff's possession and he did not have a copy of it. The plaintiff failed to produce the letter at any point prior to the arbitration proceedings, despite her obligation to do so by the terms of the agreement.[4]

On December 2, 2015, the plaintiff called Mueller to testify. When Mueller was called to testify, the plaintiff offered the letter as an exhibit. The defendant then objected to Mueller's testimony on the basis of the plaintiff's failure to disclose the letter prior to the beginning of the proceedings. The arbitrator precluded Mueller's testimony in its entirety because the defendant made numerous requests for the disclosure of the letter, prior to this point, which the plaintiff ignored.

On December 8, 2015, the plaintiff filed a motion with the arbitrator to have Mueller's testimony admitted. The arbitrator treated the motion as a request for reconsideration of the ruling that she had made, and, in a written ruling, denied the motion, stating: "The plaintiff had the ability to cure the problem of the letter's absence from the file for months. By not producing it and by not complying with the agreement to premark exhibits, the plaintiff consciously created the problem for which she now seeks consideration and relief."

The plaintiff claims that the trial court erred in denying her motion to vacate on the basis of the arbitrator's preclusion of Mueller's testimony because it was integral in "ruling on the crucial issue of the causes of the breakdown of the marriage, and in structuring awards . . . in the matter." Additionally, the plaintiff claims that, even if she wrongfully failed to produce the letter, the preclusion of Mueller's testimony was not an appropriate sanction. The defendant argues that the trial court did not err in denying the plaintiff's motion to vacate the arbitration award because, under the circumstances, precluding Mueller's testimony was squarely within the arbitrator's authority. We agree with the defendant.

"[A]rbitrators are accorded substantial discretion in determining the admissibility of evidence. . . . Indeed, it is within the broad discretion of the arbitrators to

decide whether additional evidence is required or would merely prolong the proceeding unnecessarily. . . . This relaxation of strict evidentiary rules is both necessary and desirable because arbitration is an informal proceeding designed, in part, to avoid the complexities of litigation." (Internal quotation marks omitted.) *McCann* v. *Dept. of Environmental Protection*, 288 Conn. 203, 214, 952 A.2d 43 (2008).

An arbitrator's broad discretion with regard to the admission of evidence, however, is limited by § 52-418 (a) (3).[5] "[T]his court has stated that § 52-418 (a) (3) does not mandate that every failure or refusal to receive evidence, even relevant evidence, constitutes misconduct. . . . To establish that an evidentiary ruling, or lack thereof, rises to the level of misconduct prohibited by § 52-418 (a) (3) requires more than a showing that an arbitrator committed an error of law. . . . Rather, a party challenging an arbitration award on the ground that the arbitrator refused to receive material evidence must prove that, by virtue of an evidentiary ruling, [she] was in fact deprived of a full and fair hearing before the [arbitrator]. . . . [A]n arbitration hearing is fair if the arbitrator gives each of the parties to the dispute an adequate opportunity to present its evidence and argument. . . . If the evidence at issue is merely cumulative or irrelevant, the arbitrator's refusal to consider it does not deprive the proffering party of a full and fair hearing." (Internal quotation marks omitted.) Id., 215. "Additionally, to vacate an arbitrator's award on the ground of misconduct under § 52-418 (a) (3), the moving party must establish that it was substantially prejudiced by the improper ruling." *Bridgeport* v. *Kasper Group*, supra, 278 Conn. 476.

In the present case, the trial court concluded that the plaintiff failed to meet her burden to show that she was deprived of a full and fair hearing because the arbitrator refused to hear Mueller's testimony. The trial court first noted that paragraph 17 of the arbitration agreement provided that the arbitrator "shall control the admission of evidence." Furthermore, because the parties agreed not to record the arbitration proceedings, no record of the proceedings was provided to the trial court. In the absence of a record, the trial court considered the length of the arbitration proceedings and the arbitrator's rulings, and determined that the plaintiff had a full and fair opportunity to present her case. We agree with the trial court.

Mueller's opinion regarding the plaintiff's claims of abuse was based, in large part, on interviews Mueller conducted with the plaintiff,[6] and the letter the defendant had written to the plaintiff. Although Mueller was not permitted to testify, the arbitration award and rationale reveal that the plaintiff testified at the arbitration proceedings regarding her claims of abuse. The arbitrator also referenced the contents of the letter in her

arbitration rationale, indicating that she considered it in structuring the award.

Moreover, the plaintiff failed to show that Mueller's testimony would have impacted the outcome of the proceedings. The arbitrator stated: "[I]t is impossible to be persuaded that either party is more at fault for the breakdown of the marriage." The plaintiff did not demonstrate how Mueller's testimony would have persuaded the arbitrator that the defendant was more at fault. Indeed, it is unlikely that Mueller's testimony, which likely would have been duplicative of evidence already before the arbitrator, would have negated evidence that indicated the plaintiff contributed to the breakdown of the marriage. On the basis of the foregoing, we conclude that the trial court did not err in denying the plaintiff's motion to vacate on the basis of the arbitrator's refusal to hear Mueller's testimony.

II

The plaintiff next claims that the trial court erred in failing to vacate the arbitration award on the basis of the arbitrator's alleged partiality in violation of § 52-418 (a) (2).[7] The plaintiff argues that the trial court should have vacated the award because, "[t]hroughout the arbitration hearings, the [a]rbitrator's behavior directed at the plaintiff was belligerent and aggressive." Specifically, the plaintiff alleges that the arbitrator "warned [the plaintiff] that repeated trips [to the bathroom] would not be tolerated," "screamed at the plaintiff," and slammed the door to the room where the plaintiff was meeting with her attorney and financial expert, causing ceiling tile debris to fall down from the ceiling onto the plaintiff's head, called the plaintiff a "fallen Catholic," and addressed the defendant's attorney in Hebrew. We conclude that the plaintiff's claim is without merit.

The following additional facts and procedural history are relevant to the resolution of this claim. On March 2, 2016, following the arbitrator's entry of an award, the plaintiff filed a motion to vacate the award, in which she argued that the arbitrator was not impartial. On March 28, 2016, the trial court heard testimony on the plaintiff's motion.

The plaintiff testified that during the arbitration proceedings, the arbitrator, without knocking, came into a room where she, her financial expert, Cheri Mazza, and her counsel, were meeting privately. Upon entering the room, the arbitrator screamed, and "slammed the door so hard that she knocked loose a ceiling tile" that fell on the plaintiff's head. The plaintiff also testified that during the arbitration hearing on December 21, 2015, the arbitrator held a conversation in Hebrew with the defendant's counsel, Eric Broder, and then said to the plaintiff, "oh, you fallen Catholics, you wouldn't get that."

Broder testified that, contrary to the plaintiff's claims that the arbitrator warned her that she would not be permitted to take frequent bathroom breaks, the plaintiff "constantly needed to take breaks, which were granted by [the arbitrator] throughout whether it was for the bathroom, for lunch or whatever . . . ." Broder also testified that he did not speak Hebrew to the arbitrator and that he did not hear the arbitrator address the plaintiff as a "fallen Catholic."

Finally, Mazza testified regarding the arbitrator's alleged outburst. Mazza said that she witnessed the arbitrator "burst into the room" without knocking and "slam the door" on the way out. Mazza also was present when the abitrator returned to the room and "apologize[d] for the outburst." Mazza did not, however, see a ceiling tile fall when the arbitrator slammed the door. Mazza stated: "I don't believe the entire ceiling tile fell. There was just some debris that she claimed had fallen into her hair." After the hearing, and considering the testimony of the plaintiff, Broder, and Mazza, the trial court determined that the plaintiff failed to present sufficient evidence for it to conclude that the arbitrator was not impartial.

"A party seeking to vacate an arbitration award on the ground of evident partiality has the burden of producing sufficient evidence in support of the claim. An allegation that an arbitrator was biased, if supported by sufficient evidence, may warrant the vacation of the arbitration award. . . . The burden of proving bias or evident partiality pursuant to § 52-418 (a) (2) rests on the party making such a claim, and requires more than a showing of an appearance of bias. . . . In construing § 52-418 (a) (2), [our Supreme Court] concluded that evident partiality will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration. To put it in the vernacular, evident partiality exists where it reasonably looks as though a given arbitrator would tend to favor one of the parties." (Internal quotation marks omitted.) *Toland* v. *Toland*, 179 Conn. App. 800, 814, 182 A.3d 651, cert. denied, 328 Conn. 935, 183 A.3d 1174 (2018).

In the present case, because there was no record of the arbitration proceedings, the trial court relied on the testimony presented at the March 28 hearing in determining whether the arbitrator was biased in violation of § 52-418 (a) (2). The only evidence that the plaintiff produced in support of her claim was her own testimony and that of Mazza. Mazza's testimony, however, only partially corroborated the plaintiff's account of the arbitrator's so-called outburst. The plaintiff failed to present any evidence beyond her own testimony in support of her claims that the arbitrator warned her against taking bathroom breaks, spoke to the defendant's counsel in Hebrew, and called the plaintiff a "fallen Catholic." In *Toland*, this court concluded that

a plaintiff failed to meet her burden to show partiality under § 52-418 (a) (2) when the plaintiff presented evidence from the transcript of the arbitration proceedings that demonstrated that the arbitrator "expressed some frustration and impatience" with the plaintiff. Id., 815. In the present case, the plaintiff provided the trial court with even less credible evidence of bias. Accordingly, we conclude that the trial court did not err in concluding that the plaintiff failed to meet her burden of demonstrating that the arbitrator was partial under § 52-418 (a) (2).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff does not specifically contest any of the orders of alimony or other financial orders awarded by the arbitrator.

[2] Specifically, the parties agreed to the following: "[The arbitrator] may tape record all or part of the arbitration for her own use, which recording shall not be deemed an official evidential record, nor used in any subsequent proceedings. Any such recording shall be the property of [the arbitrator] and shall be promptly destroyed after the final award and period for correction of the award. Neither party shall procure appropriate services to record the proceedings of the [arbitration] proceedings."

[3] The plaintiff filed three motions to vacate the award. The trial court marked off one of the motions as moot. The other two motions sought to vacate the award on the basis of the arbitrator's preclusion of an expert witness and arbitrator's bias, respectively. The trial court held a single hearing on both of the remaining motions on March 28, 2016.

[4] The agreement provided: "[The parties and their counsel] will, within the bounds of advocacy, fully cooperate with each other. They will cooperate in . . . the exchange of exhibits and discovery. [The arbitrator] may access sanctions . . . and other relief to a litigant for the other party's failure to comply with the arbitration process or any of [the arbitrator's] rulings or directives." It further provided in relevant part: "By November 23, 2015, except by separate agreement of the parties, counsel shall exchange with each other copies of all exhibits they intend to submit at the arbitration . . . ."

[5] General Statutes § 52-418 (a) (3) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds [that] . . . the arbitrators have been guilty of misconduct in refusing to . . . hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced."

[6] Mueller was not the plaintiff's treating psychiatrist; rather, the plaintiff's counsel hired Mueller to interview the plaintiff in connection with providing expert testimony in the dissolution proceedings. Mueller interviewed the plaintiff three times for a total of three and one-half hours. During these interviews, Mueller did not administer any kind of formal test to assess the veracity of the plaintiff's claims of abuse. Mueller reviewed the plaintiff's medical records, but failed to speak to the plaintiff's physicians or therapists. The medical records that Mueller reviewed in forming his opinion were introduced during the arbitration proceedings and were available to the arbitrator in crafting the arbitration award.

[7] General Statutes § 52-418 (a) (2) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds [that] . . . there has been evident partiality or corruption on the part of any arbitrator."